East Tennessee & Western North Carolina Railroad Company *v.* Winters.

EAST TENNESSEE & WESTERN NORTH CAROLINA RAILROAD COMPANY *v.* WINTERS.

(*Knoxville.* November 2d, 1886.)

1. RAILROADS. *Charge of Court as to statutory precautions, proper when.*

Where, in an action against a railroad company for causing the death of a person by negligently running its cars over him, there is some evidence tending to show that the deceased might have been seen by the engineer, properly on the lookout, in time to have prevented the accident, it is not error for the Court to charge the law as to the observance of the statutory precautions for prevention of accidents.

(See Code, ? 1298 (M. & V.); ? 1166 (T. & S.)

Case cited and approved: Moran *v.* Railroad Co., 2 Bax., 379.

2. SAME. *Special trains. Speed. Negligence. Erroneous charge.*

A railroad company has the right to run special trains, at such times, on such terms, and at such increased rates of speed, within the limits of prudence and safety to its passengers, as the necessities or convenience of its business may require; and hence a charge of the Court is erroneous which assumes or implies that the running of trains off schedule time, or at increased rates of speed, is, *per se,* negligence.

3. NEW TRIAL. *Statements of Judge to jury.*

Upon report of the jury that they could not agree, the Judge said: "I do not like to work all the week without accomplishing anything;" adding: "Of course I don't want you to agree upon a verdict simply to please me, or agree upon a verdict at all unless you can conscientiously do so. Any verdict you may reach must be by the concurrence of the judgment of the jury. Of course I cannot ask you to agree unless you can conscientiously do so."
*Held:* "This was not error when taken as a whole."

Case cited and distinguished: Taylor *v.* Jones, 2 Head, 565.

(See Frady *v.* State, 8 Bax., 349; Parrish *v.* State, 12 Lea, 655.)

East Tennessee & Western North Carolina Railroad Company *v.* Winters.

4. SAME.    *Gambling verdict.*

A verdict in a damage suit, arrived at by an agreement that one juror should add $400 to the amount he was for, and then each one of the entire jury should reduce the amount he was for, $400; and that the sums thus ascertained should be added together and the result divided by twelve, and the latter result adopted as the verdict of the jury, is a gambling verdict, and cannot stand.

Cases cited and approved: Joyce *v.* State, 7 Bax., 273; Gilman *v.* State, 1 Hum., 45; Rose *v.* Lane, 3 Hum., 160.

5. SAME.    *Affidavits of jurors.*

Although the practice of admitting affidavits of jurors to impeach their verdict is not to be favored or extended, yet it is frequently the only means by which the Court can be apprized of the misconduct of the jury; and such affidavits will be considered where it appears therefrom that the fairness and purity of the jury trial has been tainted by such methods as gambling verdicts.

Case cited and approved: Wade *v.* Ordway, 1 Bax., 229.

6. SAME.    *Same.    Presented after adjournment and before signing of record.*

Affidavits of jurors showing a gambling verdict, which are made part of the record, will be considered by this Court, although they were presented to the Judge out of court, after the motion for a new trial had been overruled and the court had adjourned—it appearing that the record had not been signed and that the Court had time to have acted upon said affidavits, and that they were presented as soon as the facts were ascertained.

---

### FROM CARTER.

---

Writ of error to Circuit Court, Carter County. NEWTON HACKER, J.

N. M. TAYLOR and ROBERT BURROW for Railroad Company.

S. J. KIRKPATRICK for Winters.

FOLKES, J. On the night of the 19th of November, 1884, Daniel Winters, the then husband of plaintiff, was returning from a grocery with three companions.

They had been drinking all day, and all of them were more or less under the influence of liquor, and while crossing a long and very high trestle, singing at the top of their voice, a special train came up behind them. One of the men swung over the side of the trestle, holding to the outer guard rail; another got out on the end of a cap, or cross-beam; the third man sought shelter between the rails by getting down on the cap, a space which seems to have been about three feet long, twenty-four or twenty-six inches wide, and about thirty or thirty-three inches deep from the top of the iron rail. The deceased attempted to get into this same cap, already occupied by one of his companions, and it would seem that he succeeded in getting in sufficiently to avoid the pilot and the ash-box of the engine, but was struck by the break-beam of the tender, dragged from his retreat, and killed.

This action is brought by the widow to recover damages for the killing.

There was verdict and judgment for the plaintiff for $1,700, and the railroad company have brought the cause to this Court by writ of error.

Several reasons are assigned by the plaintiff in error why the judgment should be reversed. It is claimed the proof does not show that any

"person, animal, or other obstruction, appeared upon the track," and therefore the engineer was not, as charged by the Court, required to observe the statutory precautions of sounding the alarm whistle, putting down breaks, etc., citing in support of this position *Moran* v. *The Railroad*, 2 Bax., 379.

The engineer and fireman both testify that they were on the lookout ahead, and that no person or obstruction appeared on the track.

It is insisted that as the proof shows the track was straight for a quarter or half-mile in the direction from which the train approached the trestle, and the night dark, the deceased and his companions saw the reflected light of the engine, or felt the concussion caused by the engine upon getting on the trestle, before the lookout on the engine could see them, and had immediately sought their respective places of shelter, so that when the engine approached near enough for them to have been seen the men were not visible, and the train passed without having sounded any alarm.

If this were all the proof the position might be well taken, but inasmuch as there is testimony from one or more of the companions of deceased, to the effect that the first intimation they had of the approach of the train was the full light of the head-light on the cross-ties in front of them (from which it is argued that the train, coming as it was, up behind them, must have been sufficiently near for the engineer to have seen them,

had he been on the lookout), we think there was evidence which warranted the Court in giving the charge complained of.

The next error assigned is that in charging the jury the trial Judge, after defining contributory negligence, used the following language:

"If the evidence shall show you that deceased went upon the railroad bridge in an intoxicated condition, about schedule time for the train to pass, this would constitute gross negligence."

We are of opinion that this charge, taken in connection with the fact that the Court had allowed, over the objection of counsel for the plaintiff in error, witness after witness to testify that the train which caused the death of deceased was "a special;" that "it was running out of schedule time;" that it "was running faster than the regular train usually ran;" that "it was making a special trip, for one passenger, who was paying a special price for the train to make connection with the East Tennessee, Virginia & Georgia Railroad" —was well calculated to mislead the jury, and cause them to understand that, to some indefinite extent, the liability of the railroad for the killing of a person on its track was increased by these facts so admitted in evidence.

Of course there can be no question as to the right of the railroad to run special trains at such times, and on such terms, and at increased speed within the limit of prudence and safety to its

passengers, as the necessities or convenience of its business, general or special, may require.

The jury might well have inferred, from the language of the charge already quoted, that it would not be gross negligence for an intoxicated man to undertake to cross such a dangerous bridge at other than schedule time for a train to pass. Especially is the charge misleading in this regard when we see that immediately following the language quoted the Court adds:

"Any negligence of the injured person *in such case* which may have contributed to cause the accident, or without which the accident would not have occurred, will he taken into consideration by you in mitigation of damages."

In "such case" could naturally be understood as referring to and limiting the charge already given to the case of an intoxicated person going on the trestle "about schedule time."

It is next urged that a new trial should have been granted for error in not accepting and considering the affidavits showing misconduct of the jury. The affidavits of two of the jurors show conclusively that the judgment is based upon a gambling verdict.

The bill of exceptions shows that the jury, after they had been out for some time, returned into court and reported that they could not agree. The trial Judge then said:

"I do not like to work all the week without accomplishing anything." He then added: "Of

course I do not want you to agree upon a verdict simply to please me, or to agree upon a verdict at all unless you can conscientiously do so. Any verdict which you reach must be by the concurrence of the judgment of the jury. Of course I cannot ask you to agree unless you can conscientiously do so."

This was not error when taken as a whole; but we do not say that the first sentence, taken alone, would not constitute reversible error. *Taylor* v. *Jones*, 2 Head, 565. We refer to this language of the Circuit Judge merely as shedding some light upon the subsequent conduct of the jury.

The affidavits of the jurors referred to show that when sent back to further consider the case, said verdict was arrived at in the following manner: "Each juror was in favor of a certain sum, and that amount was set down; then it was agreed that one juror would raise the amount he was for $400 if all would then take $400 off of the amount they were for, including the one who raised his amount $400, and then the separate amounts should be added together and the sum total be divided by twelve, which was to be the verdict of the jury. This was done, and the amount of $1,700 was arrived at in this way as said verdict."

The record further shows that these affidavits were accompanied by the following affidavit of counsel:

"Personally appeared Robert Burrow, who makes oath that he was an attorney for defendant in the

case of *Martha Winters* v. *The East Tennessee &
Western North Carolina Railroad Company;* that
when the verdict of the jury was received in this
case it was nearly dark Saturday night, the last
day of the term, and that he, as attorney for de-
fendant, at once entered a motion for a new trial,
which was promptly overruled by the Court. The
Court then adjourned; and immediately after ad-
journment, and before the records were signed,
affiant discovered that the verdict of the jury was
obtained by each juror setting down the amount
he was in favor of as a verdict, and then the sep-
arate amounts added together and the sum total
divided by twelve, which was made the verdict of
the jury. Affiant further states that, as soon as
he discovered the manner in which the verdict
was reached, he told the Circuit Judge that the
jury had made a gambling verdict. Affiant im-
mediately prepared affidavits of jurors in the very
shortest time he possibly could (less than an hour)
and presented the same to the Circuit Judge,
after having had the Clerk to indorse them 'filed,'
and asked for a new trial of said cause. Affiant
makes this application in order that the ends of
justice may be attained."

The bill of exceptions then recites that "Court
adjourned about six o'clock, and within an hour,
and before the record was signed, defendant's coun-
sel asked the Court, at his hotel, to reconsider his
action in overruling the motion for a new trial,
and to allow defendant to file affidavits to set

aside the verdict. This the Circuit Judge declined to do. About one hour after adjournment defendant's attorney presented the Circuit Judge the affidavits (already referred to), which he declined to examine."

It is too well settled by numerous adjudications of this Court to need argument at this late day that a verdict arrived at in the manner indicated in this record, and agreed to *before* the *result* is known, cannot stand. 7 Bax., 273; 1 Hum., 45; 3 Hum., 160, and other cases that might be cited. But the difficulty presented in this case grows out of the fact that the evidence of this wrong on the part of the jury was not offered to the trial Judge until after the formal motion for new trial had been overruled and after the Court had adjourned.

While it is the policy of our law to discourage the interference with verdicts upon the affidavits of jurors, and the practice is not to be extended, yet it is frequently the only means by which the Court can be apprised of the misconduct of jurors; and when it is made to appear that the fairness and purity of the jury trial has been tainted by such methods as are disclosed in this record, the Circuit Court should not be over nice as to the *time* when such evidence is offered.

It is true that the record shows the Court had adjourned, and that the affidavits were presented out of Court; but it likewise appears that the minutes had not been signed, and until this is

East Tennessee & Western North Carolina Railroad Company *v.* Winters.

done the entire proceedings of the term were before the Court, and it was within the power, as we think, within his duty, to have examined the affidavits when informed by an officer of his Court (as was the attorney in this case) that they would show such misconduct on the part of the jury as would, under well-settled principles, vitiate the verdict.

It is not shown that there was not time for the Court to have considered the affidavits, or that there was any serious difficulty in the way of his doing so. There seems to have been time to have prepared a very full bill of exceptions before the minutes were signed.

It would have taken less time to have examined the affidavits. The labor and time necessary for the preparation of the bill of exceptions, and the expense and delay incident to bringing the case to the appellate court, could all have been avoided.

It is true that the action of the trial Judge after leaving the bench, and while waiting for the preparation of bills of exception, and for orders and decrees to be entered before finally signing the minutes of the term, is a matter so largely within the discretion of the Court, that we would be slow to disturb it, except where it manifestly appears that there has been an abuse of such discretion.

If it was right for the trial Judge to have refused to examine the affidavits, it would have

been equally proper for him to have refused to allow them to be made a part of the record by incorporating them into the bill of exceptions.

Without deciding that it would have been error for him to have refused to let any thing appear in the bill of exceptions which transpired between himself and the attorney at his hotel, when the papers were first presented, we hold that when it appears from the affidavits of jurors in the bill of exceptions, that a verdict was reached in the manner so clearly shown in this case, we will not lend the aid of this Court to the enforcement of such a verdict, by an affirmance of a judgment based thereon.

In such cases the convenience, indeed, the rights of the parties litigant, are less to be considered than that this Court shall take care to see that judicial proceedings are protected from even a suspicion of taint, and thus preserve in the public mind a salutary respect for the courts of the country. *Wade* v. *Ordway*, 1 Bax., 229.

There are other objections urged by counsel which it is not necessary now to notice.

Inasmuch as there is to be a retrial of the cause, we do not discuss the evidence.

For the reasons stated the judgment will be reversed and cause remanded.