SEARS, ROEBUCK & CO. v. STEELE.—130 S. W. (2d), 160.

Eastern Section.   January 12, 1939.

Petition for Certiorari denied by Supreme Court, July 1, 1939.

276

L. M. Davis, Reber Boult, and Trabue, Hume & Armistead, all of Nashville, for plaintiff in error.

Seth M. Walker and Levine & Levine, both of Nashville, for defendant in error.

PORTRUM, J.  This is a suit for malicious prosecution instituted by George Steele against Sears, Roebuck & Company and another, A. D. Halmontaller, but pending the litigation the last named defendant was dismissed and he was used as a witness for the plaintiff. There was a verdict in the lower court in favor of the plaintiff in the sum of $2500 and an appeal-in-error has been prosecuted to this court for a review.

The facts upon which the suit is based are as follows: Sears, Roebuck & Company is a foreign corporation with its home office in the city of Chicago; it is engaged in a nation-wide mercantile business, and has established chain stores throughout the country, and it is doing business in Tennessee by the operation of stores in the principal cities, one of its stores being located in Nashville, which is the one we are concerned with.  The Nashville store is in charge of a manager, an assistant manager, a cashier, numerous clerks, and other employees.  This store is engaged in the sale of merchandise at retail, and in the course of its business it accepts checks from its prospective customers in payment or in part-payment of their purchases, after the check has passed through the Credit Department and then approved by the officers, or the manager and assistant manager of the store, the assistant manager being in charge of the Credit Department.  Many of these customers' checks are approved and accepted during the course of business, and in the course of a week as many as ten or twelve checks are returned dishonored by the bank upon which they were drawn.

If a check is returned with the notation "Insufficient funds," the assistant manager calls the party over the phone or writes a card conveying the information and requesting an immediate settlement. If no response is made to this communication the account, or check,

is then placed in the hands of a collector, selected by the manager of the store, and he calls upon the party who negotiated the check. If a reasonable excuse is given and indulgence is asked, time is extended in order that the party may make good the check. But if the check proves to be a forgery and the claim cannot be adjusted with the party against whose account it is drawn, then it is the rule of the company that the check be sent to the home office in Chicago and the local store hears nothing further from the matter.

The plaintiff, George Steele, operates a garage a few doors from the local store in Nashville, and maintains a pay roll of four or five employees, and he pays his employees by check. These checks are received after banking hours, and the employees cash a number of them with the defendant, Sears, Roebuck & Company, and in the past some of them have been returned unpaid, and the assistant manager, after taking the matter up with the plaintiff, had adjusted the claims with him. On January 27, 1936, the plaintiff issued a check to an employee, Robert Holmes, who had quit his employment before the regular pay day, and the check was issued for the wages due in the sum of $7.80, but postdated until February 1, 1936. This check was not completely filled out by Steele; the place where the figures are placed was left blank, and a sufficient space left between the word "seven" written out, and 80/100 in figures, to permit the holder to write in the word "seventeen," and when he did this he wrote in the figures $17.80 in the blank place above referred to. He then took the check to Sears, Roebuck & Company and made a small purchase and received $17 in cash. This check went through the Credit Department before it was honored, and George Steele's signature being well-known to the assistant manager, it received his O. K. It seems that no attention was paid to the alteration which is apparent upon the face of the check, it being written in different ink and not in the same handwriting. This check was deposited by the defendant but was returned by the bank with the notation that it was postdated. Steele was immediately communicated with, and asked to see the check when it was sent to him, and he brought it back to the place of business of the defendant, saying that the check had been raised, and offered to pay the $7.80 for which it was first written. The assistant manager took the position that Steele had been so careless in writing the check that he made it possible for the employee to raise it, and for this reason Steele should bear the loss. Steele declined to pay the full amount of the raised check, and the assistant manager told him that he would prosecute him if he did not pay the check.

The manager of this store had employed a deputy sheriff as a collecting agent for the store, in whose hands he placed for collection these returned checks, paying him twenty-five per cent of the amount collected. The deputy sheriff collected additional compensation by

serving the papers in the civil suits and collecting officer's fees; and the agent states that he gave notice and took out criminal processes and collected the additional official fee incident to the criminal prosecutions. He states that he instituted fifty or more criminal prosecutions upon these returned checks, collecting the checks, retaining his compensation, together with his official fee. The company's records show that he was paid his commission, that is the twenty-five per cent, by a voucher drawn upon the company, after he had paid in the collection to the company. And that the vouchers show only two collections made by his agent. This is a disputed fact which cannot concern us here. We adopt the theory that he made as many collections as he stated he did.

This disputed check was soon thereafter placed in the hands of the collecting agent and deputy sheriff, and being unable to collect the same by solicitation, he gave the three days' notice and instituted a criminal prosecution against Steele, under the so-called "bad check" statute, codified in the Code, Section 11157, and at the same time instituted a civil suit before a Justice of the Peace to reduce the check to judgment. In the meantime, the agent's commission as a deputy sheriff had been recalled or surrendered, and the papers were served by other officers. Steele was arrested and brought before a Justice of the Peace and his case was bound over to the Grand Jury; he was retained for a period of three hours, pending the execution of bond, and at the time of his retention his father was fatally ill at the hospital, and he had been humiliated in being arrested in his place of business and in the presence of his employees. The collecting agent did not appear before the Grand Jury, and no true bill was found against Steele.

After this prosecution was terminated, Steele, through his attorney, sent a check for $7.80 to the defendant company, in satisfaction of the amount due upon the check; the manager of the company accepted the check, writing that it had been received as a credit upon the check originally issued and cashed by it. After this communication was received, this suit was instituted for the malicious prosecution of the plaintiff, Steele, by the defendant, Sears, Roebuck & Company, and its agent, Halmontaller.

█ Neither the manager nor the assistant manager knew of this prosecution until after the institution of this suit, but perhaps it is fair to say that the assistant manager was chargeable with notice, since he had threatened prosecution and later had placed the claim in the hands of a deputy sheriff, in view of the fact that the deputy states he had made many criminal prosecutions, which fact he had made known to the assistant manager.

█ Upon this state of facts, has the plaintiff made out his case against the principal, Sears, Roebuck & Company, because of the unwarranted act of its agent or agents in the institution of this criminal

prosecution? The rule of the principal's liability is stated in the case of Hudson v. Philadelphia Life Insurance Co., 152 Tenn., 691, 702, 280 S. W., 403, 406, as follows:

''The rule is well settled that the liability of a principal for the act of his agent in instituting a malicious prosecution or causing a false arrest or imprisonment is dependent upon whether the principal previously authorized or subsequently ratified it, or whether the act was within the scope of the agent's employment. . . .''

The statement of this principle is followed by numerous citations, and a review of the authorities to which reference is here made.

■ The proof establishes without conflict that the collecting agent or deputy sheriff never had any direct communication with the principal at the home office in Chicago. This communication was with the manager and assistant manager of the store in Nashville, and they in turn were but agents of the principal. The manager and the assistant manager testify that it was the company's rule that forged or altered checks be returned to the home office in Chicago, and that the managers had no authority to deal with these checks. Their denial of authority is more or less a denial of an issue of law, but the facts upon which they base their denial and which they state support the conclusion that they had no direct authority to attempt the collection of a forged check. The uncontradicted proof establishes that the agents were not previously authorized to institute criminal prosecution upon forged checks; in fact to do so would be to violate an express rule of the company, which was made to define the agent's authority. And there was no subsequent ratification by the principal for the reason that the principal had no knowledge of the violation of its rule, or the institution of the criminal prosecution until the institution of this suit. And the managing agent at Nashville, who did not have the authority to institute the criminal prosecution, could not ratify it on behalf of the principal. So, if the assistant manager knew that this collecting agent and deputy sheriff had instituted fifty or more criminal prosecutions and acquiesced in the conduct, this knowledge is not chargeable to the principal until it is brought home to the principal by some adequate means. This leaves but one remaining inquiry, whether the act was within the scope of the agent's employment.

■ The employment of a collecting agent does not impliedly endow that agent with the right to institute criminal prosecutions for the purpose of collecting debts; it is a violation of a well-established public policy to use the criminal processes for the purpose of collecting debts, and an implied right to institute criminal processes for this purpose would be a violation of this policy. For this reason it does not and cannot fall within the scope of the employment. Could an agent recover compensation from his principal in instituting criminal prosecution to collect civil debts? We think the

agent making such a demand could come into court with unclean hands and be repelled because of this stated public policy. It is true that this statute which authorizes the payment of dishonored checks within the notice period to avoid criminal prosecution makes it tempting to use the criminal processes in collecting a check, but the primary purpose of the statute is to punish a fraudulent intention and the act does not destroy or weaken the public policy above referred to.

A case very much in point upon the facts is Rosamond Lamm v. Charles Stores Company, Inc., 201 N. C., 134, 159 S. E., 444, 77 A. L. R., 923. This case sets out cogent reasons for the principles herein announced, and illustrates why a manager of a chain store is not endowed with the implied power to institute criminal prosecutions, either for the purpose of collecting debts or to punish the culprit.

This court is of the opinion that the trial judge should have directed a verdict in favor of the principal, Sears, Roebuck & Company, and dismiss the suit as to it. This error is now corrected and the motion is sustained and the suit is dismissed.

There are other assignments of error which raise interesting issues but are deemed immaterial; if the court is in error and the collecting agent had implied authority, it being within the scope of his authority to institute criminal proceeding, then there is abundant evidence to support the verdict of the jury, notwithstanding the testimony of the collecting agent was wholly discredited by the trial judge, for it cannot be disputed but what the prosecution was instituted by the agent and it was unfounded. The trial judge could have well approved the verdict and at the same time discarded the evidence of the collecting agent.

The judgment of the lower court is reversed and the suit is dismissed at the cost of the defendant in error.