**Hager ODOM, Plaintiff-Appellant,**

**v.**

**Donald GRAY et al., Defendants-Appellants.**

Supreme Court of Tennessee.

March 18, 1974.

Hager Odom, pro se, Wild & Harrison, Chattanooga, for plaintiff-appellant.

Goins, Gammon, Baker & Robinson, Spears, Moore, Rebman & Williams, Joe Timberlake, Chattanooga, for defendants-appellants.

OPINION

PER CURIAM.

Certiorari was granted in this case on one point only, to wit: Can punitive damages or "smart" money be awarded against joint or multiple defendants when the financial worth of only one defendant is introduced into the evidence?

The factual allegations in the complaint were found in favor of the plaintiff by the jury, approved by the trial judge, and concurred in by the Court of Appeals, and from a review of the voluminous record, we agree that the record supports that finding of facts.

There are two lines of authority on this question, generally referred to as the majority rule and minority rule.

The rule referred to as the majority rule is that where a number of defendants are sued jointly, their financial worth, either individually or collectively, cannot be shown for the purpose of punitive damages.

It is clear in this state that the financial worth of a defendant who is not sued in a joint or multiple action may be considered along with other facts and circumstances in assessing punitive damages.

The rule adopted by the Court of Appeals is that whatever would be evidence as to one defendant would be competent to all defendants.

These two rules are fully discussed in the opinion of the Court of Appeals and after careful consideration, we agree with the Court of Appeals. Under this rule of evidence all parties have an opportunity to introduce evidence tending to show the financial worth or lack thereof of all parties, and we think such a rule is fair. The Court of Appeals Opinion is attached hereto as an appendix to this opinion.

We therefore affirm the Court of Appeals.

APPENDIX

IN THE COURT OF APPEALS OF
TENNESSEE WESTERN SECTION
SITTING AT KNOXVILLE

HAGER ODOM

PLAINTIFF–APPELLANT
VS.

RUSTCRAFT BROADCASTING COM-
PANY OF TENNESSEE, INC.,
TIMES PRINTING COMPANY,
CHATTANOOGA NEWS FREE
PRESS, RUSSELL SHELLEY AND
MRS. RUSSELL SHELLEY
DEFENDANTS-APPELLANTS

CARNEY, Presiding Judge.

The plaintiff below, Hager Odom, age 51, an attorney of Chattanooga, Tennessee, was awarded $175,000.00 in compensatory damages and $45,000.00 in punitive damages by the jury in his suit for unlawful conspiracy and false arrest. The Trial Judge suggested a remittitur of $95,000.00 to be deducted from the compensatory damages and rendered judgment for $125,000.00 against all of the defendants-appellants. Plaintiff accepted the remittitur under protest and all of the parties have appealed to this Court.

The plaintiff, Hager Odom, alleged that the defendants entered into a conspiracy unlawful at common law to charge the plaintiff falsely with the crime of indecent public exposure of his genital area so as to enable the police officers of the City of Chattanooga to enter plaintiff's combination sleeping quarters and law offices without a warrant and to search the same, primarily for the arrest of one Leon Payne. Mr. Payne had been involved in a fight with David Brown, an off-duty city policeman. Plaintiff averred that defendants had the further purpose of obtaining sensational news items for the defendant Chattanooga Times and the defendant Chattanooga News Free Press, two news-papers published in the City of Chattanooga, and for the defendant Rustcraft Broadcasting Company which owned and operated a television station in the City of Chattanooga.

The plaintiff testified that his home was illegally entered and his private quarters ransacked; that the plaintiff himself was physically beaten; that he was arrested on the false charges of disorderly conduct, public drunkenness, harboring a felon, resisting arrest and indecent exposure; that he was taken to police headquarters in the City of Chattanooga and later indicted by the grand jury on several of said charges; that widespread publicity of said charges was given in the defendants' newspapers and over the defendant Rustcraft's television station; that as a result of said false charges and the great publicity attendant therefrom the plaintiff suffered great humiliation, embarrassment, his health was greatly impaired, his law practice dwindled to almost nothing; that he was acquitted of all of said charges and he brought suit for one and a half million dollars.

In addition to the above named appellants, two Chattanooga City Police officers, Donald Gray and Gerald Smith, were made parties defendant, but the jury returned a verdict in favor of said two police officers and they are no longer before the Court.

Plaintiff's declaration also contained a count charging unlawful statutory conspiracy. We copy T.C.A. Sections 39–1101, 39–1102, and 39–1103 as follows:

"39–1101. 'Conspiracy' defined.— The crime of conspiracy may be committed by any two (2) or more persons conspiring: (1) To commit any indictable offense; (2) falsely and maliciously to indict another for such offense; (3) to procure another to be charged with, or arrested for, any such offense; (4) falsely to move or maintain any suit; (5) to cheat and defraud any person of any property by means in themselves criminal, or by any means which would

amount to a cheat; (6) to obtain money by false pretenses; (7) to commit any act injurious to public health, public morals, trade, or commerce, or for the perversion or obstruction of justice, or the due administration of the law. (Code 1858, § 4789; Shan., § 6693; Code 1932, § 11064.)"

"39–1102. Overt act—Necessity.—No agreement shall be deemed a conspiracy unless some act be done to effect the object thereof, except an agreement to commit a felony on the person of another, or to commit the crimes of arson or burglary. (Code 1858, § 4791; Shan., § 6695; Code 1932, § 11066.)"

"39–1103. Conspiracy a misdemeanor. —Persons guilty of any conspiracy described in §§ 39–1101, 39–1102 or of any conspiracy at common law, are guilty of a misdemeanor. (Code 1858, § 4790; Shan., § 6694; Code 1932, § 11065.)"

A short statement of the bizaare facts leading to plaintiff's arrest is in order.

Shortly after midnight on October 3, 1968, plaintiff Hager Odom was at home with guests. A former client, Leon Payne, came to plaintiff's home and announced that he, along with two friends, had been involved in a fight with an off-duty policeman, David "Cotton" Brown. Payne explained to the plaintiff that he feared for his life if he should be arrested by members of the Chattanooga Police Force without the presence of an attorney and that he had been unable to locate his regular attorney, Mr. Douglas Meyer of the Chattanooga Bar, who lived in the same neighborhood as did the plaintiff. Payne asked the plaintiff to assist him. The plaintiff called the office of the Chattanooga Police and inquired if a warrant was outstanding for Mr. Payne and did not get any definite information. Thereupon, the plaintiff called the office of the Hamilton County Sheriff and asked if a warrant was outstanding to which he received the reply that no warrant was outstanding but that the police were seeking Payne for questioning. Plaintiff

thereupon stated to Sergeant Holt, the officer in charge at the sheriff's office, that if a warrant should issue, Payne would appear on the following morning at 9:00 o'clock at the Chattanooga Police station in company with his attorney, Mr. Meyer.

In the meanwhile plaintiff's guests had left and plaintiff told his former client, Payne, that he, Payne, could spend the night on the couch in plaintiff's law office and plaintiff went to bed. The sheriff's office reported to the Chattanooga police that Mr. Odom had called in about Mr. Payne and that Payne was probably at the home of plaintiff Odom. Thereupon, the Police Department dispatched several cars with policemen to the home of the plaintiff. Police were accompanied by Fred Gault, police reporter for the Chattanooga Times; the defendant, Marvin Russell Shelley, police reporter and photographer for the Chattanooga News Free Press; his wife, the defendant Yvonne Shelley; David Walker, reporter-photographer for WRCB Television of Chattanooga owned by defendant Rustcraft Broadcasting Company.

At least three police cars, and maybe more, gathered in the street outside plaintiff's apartment-offices located on the second floor above the street. According to the allegations of plaintiff's declaration which were found to be true by the jury, when the police announced that they could not go into the plaintiff's apartment without a warrant, it was agreed by Mr. Gault, employee of defendant Chattanooga Times, David Walker, employee of Rustcraft Broadcasting Company, and defendant Russell Shelley, employee of defendant Chattanooga News Free Press, that they would assist the police to enter the apartment without a warrant by the scheme of Mrs. Shelley calling and reporting to the police station that the plaintiff was then and there publicly exposing himself in an open window. Mrs. Shelley did place a call using her maiden name so charging the plaintiff with public exposure.

It was the contention of the plaintiff that the two police officers, Gray and Smith, also participated in the conspiracy and there was substantial evidence to support such contention but the jury acquitted such two police officers of participation in the conspiracy and the judgment has become final. Police officers and some of the newspaper and television reporters and photographers testified that the plaintiff was, in fact, exposing himself. Reporters testified that the plaintiff was drunk and was cursing and threatening the officers.

Plaintiff was corroborated in his testimony that he was not drunk and that he was not publicly exposing himself by Mr. Vick, a constable who was present. We hold that there was ample evidence from which the jury could reasonably find that the news reporters did form a conspiracy to make false charges that plaintiff was guilty of the crime of unlawfully exposing himself publicly in the window of his law office to assist the police officers to gain admittance to plaintiff's apartment and to enable the reporters to gain a sensational news story. See Stansberry v. McKenzie, et al. (1951), 192 Tenn. 638, 241 S.W.2d 600. All of the assignments of error by all of the defendants relating to the sufficiency of the evidence of the conspiracy are overruled.

The essential elements of a cause of action for malicious prosecution are that the prior suit or judicial proceedings has been finally determined in favor of the plaintiff; that the proceedings were brought through malice on the part of the defendant and without probable cause. Kauffman v. A. H. Robins Co. (1969), 223 Tenn. 515, 448 S.W.2d 400. Want of probable cause cannot be inferred from malice. Peoples Protective Life Insurance Co. v. Neuhoff, 56 ·Tenn.App. 346, 407 S.W.2d 190. However, malice may be inferred for want of probable cause. Dunn v. Alabama Oil & Gas Co. (1956), 42 Tenn.App. 108, 299 S.W.2d 25.

However, it is contended by the defendants, Chattanooga News Free Press, Chattanooga Times, and Rustcraft Broadcasting Company, that they are not liable in damages because the acts of their employees were unauthorized and beyond the scope of their employment. Appellants cite and place primary reliance upon the cases of Sears, Roebuck & Co. v. Steele (1939), 23 Tenn.App. 275, 130 S.W.2d 160, and Averill, et al. v. Luttrell (1957), 44 Tenn.App. 56, 311 S.W.2d 812.

In the case of Sears, Roebuck & Co. v. Steele, supra, the plaintiff Steele, who operated a garage a few doors from the local store of Sears, Roebuck & Company in Nashville, issued a check to an employee in the amount of $7.80 which was raised by the employee to $17.80 and cashed at Sears, Roebuck & Company. The check had been post-dated by the plaintiff Steele and the bank returned it to Sears for that reason. When the assistant manager of the local store communicated with plaintiff Steele, Steele noted that the check had been raised but said he was willing to pay the $7.80 for which it had first been written. The assistant manager refused, insisting that Steele had been careless in writing the check making it possible for the employee to raise the amount of it and for this reason, insisted that Steele should bear the entire loss and threatened him with prosecution.

The check was turned over to a deputy sheriff who was a regular collection agent of unpaid checks for the local store, Sears, Roebuck & Company. The deputy sheriff then issued a warrant and charged plaintiff Steele with a felony under the "Bad Check Statute," then Code Section 11157. Plaintiff Steele was arrested, brought before a Justice of the Peace and bound over to the grand jury to await the action of the grand jury. The grand jury refused to indict the plaintiff. After the termination of the criminal prosecution, plaintiff Steele · brought an action of malicious prosecution against the defendant Sears, Roebuck & Company and its assistant manager.

The manager and assistant manager testified that it was the company's rule that

forged or altered checks should be returned to the home office of Sears, Roebuck & Company in Chicago and that the managers had no authority to deal with forged checks. The Court of Appeals, speaking through Judge Portrum, found that the home office of Sears, Roebuck & Company had no knowledge of the criminal prosecution of the plaintiff and had not ratified the same and that the employment of a collecting agent, such as the deputy sheriff, did not impliedly endow the deputy sheriff or agent with the right to institute criminal prosecutions for the purpose of collecting debts. The Court commented that it would be a violation of a well-established public policy to use the criminal processes for the purpose of collecting debts and an implied right to institute criminal processes for this purpose would be a violation of this policy and hence, the Trial Court was in error and should have directed a verdict in favor of the defendant employer, Sears, Roebuck & Company. See 18 A.L.R.2d 402 and 92 A.L.R.2d 15.

In the Averill case which was appealed from the Circuit Court of Hamilton County, the plaintiff Lyle Luttrell was a professional baseball player employed by the Chattanooga Baseball Club and brought suit against the defendant, Nashville Baseball Club, and its catcher, the defendant, Earl Averill, Jr., for damages as a result of an assault and battery committed by Averill upon the plaintiff during the playing of a regularly scheduled game. Luttrell was at bat and thought that the pitcher was deliberately throwing at his head trying to hit him; Luttrell, in disgust, threw his bat in the direction of the pitcher's mound. Thereupon, Averill, the catcher, without any warning, stepped up from behind Luttrell and struck him a hard blow on the side or back of his head with his fist knocking the plaintiff Luttrell unconscious and fracturing his jaw. It was undisputed that there had been no previous animosity or malice between Averill and Luttrell. In holding that the Nashville Baseball Club was not liable for the acts of its employee, Averill, the catcher, our Tennessee Court

of Appeals, speaking through the late and much lamented Judge Peabody Howard, held that the act of the agent was wholly independent and foreign to the scope of his employment and the employer was not liable for such acts.

We hold that neither the case of Sears, Roebuck & Co. v. Steele nor Averill v. Luttrell is controlling of the issues in the case at bar because of the difference in factual situation. A master is liable for the tortious acts of his servant done in the course of his employment although they may have been done in disobedience of the master's instructions. McConnell v. Jones, (1949), 33 Tenn.App. 14, 228 S.W.2d 117; Anderson v. Covert (1952), 193 Tenn. 238, 245 S.W.2d 770. In the case at bar the acts of defendant Shelley, reporter Gault, and reporter Walker as reporters and photographers were not wholly independent and foreign to the scope of their employment. On the contrary, their unlawful acts were done directly within the scope of their employment and in furtherance of their employer's business, namely, to get news stories and pictures. The products of their unlawful acts were used by their employers in the publication of the news stories by newspaper and television.

Since the jury disbelieved defendant's witnesses that plaintiff Odom was, in fact, publicly exposing himself and the jury found that the defendants' employees made false charges against the plaintiff, we hold that the defendants, Chattanooga Times, Chattanooga News Free Press, and Rustcraft Broadcasting Company, are not entitled in this Court to rely upon the defense that their servants acted to vindicate public justice or redress offenses against society. See 32 Am.Jur.2d, False Imprisonment, Section 41.

The assignments of error relating to respondeat superior are overruled.

The Chattanooga Times, Chattanooga News Free Press, and Rustcraft Broadcasting Company all assign as error the action of the Trial Court in refusing to per-

mit police officer Pomeroy to give his reasons for requesting the defendant, Mrs. Shelley, to telephone police headquarters and make the charges of public and indecent exposure against the plaintiff Odom. Officer Pomeroy testified that when he arrived at the scene he talked to the defendant, Mrs. Shelley, and possibly one or two other women who had gathered in the crowd outside the plaintiff's offices and when Mrs. Shelley told him that she had seen the plaintiff standing in the window undressed, he asked her to go to a phone and report the charge to the police station. The Trial Judge refused to permit him to state that he had had a similar case which did not stand up in court because the female had not made the complaint. His Honor the Trial Judge refused to permit Officer Pomeroy to go into the reasons for asking Mrs. Shelley to make the phone call to the police station. The rejection of such evidence was harmless error and did not affect the verdict of the jury. The gravamen of Mrs. Shelley's offense was the false charges and not the person to whom made.

For the same reason those assignments of error relating to the refusal by the Trial Judge to admit in evidence a divorce petition filed by plaintiff's wife against him and in refusing to admit into evidence records of the convictions of the witness Leon Payne are overruled.

The assignments of error that the Trial Judge erroneously implied to the jury that there was, in fact, a conspiracy are overruled because it does not appear that such language by the Trial Judge affected the verdict of the jury. The comments were, at most, harmless error.

We find no merit in those assignments of error which insist that the Trial Judge should have declared a mistrial because of alleged prejudicial comments made by the plaintiff in the presence of the jury. Some of these comments were improper but from our reading of the record, we are of the opinion that the jury fully understood the issues involved in the litigation and were not influenced in their verdict by the comments of the plaintiff and his attorney during the course of the trial. Therefore, these assignments of error are respectfully overruled.

Rustcraft Broadcasting Company, by its assignment of error XIV, insists that the Trial Court erred in permitting the plaintiff to cross-examine Attorney General Ed Davis as to whether or not Davis had been censured by the Hamilton County Grand Jury. The Trial Judge has wide discretion in the matter of cross-examination and we find no abuse of that discretion in the case at bar. The assignment of error is overruled.

We find no merit in assignment of error XV by Rustcraft that the Trial Court erred in admitting into evidence only one photograph of the wounded officer, David Brown. We find no abuse of discretion on the part of His Honor the Trial Judge and do not find that the refusal to permit additional photographs affected the verdict of the jury. The assignment of error is, therefore, respectfully overruled.

We find no merit in Rustcraft's assignment of error XVI that the Trial Court erred in reopening the proof at the conclusion of all testimony and that the Court erred in refusing to let the appellant, Rustcraft, introduce testimony of officer David Brown after plaintiff announced he would not read the deposition of Leon Payne. We find no abuse of discretion on the part of the Trial Judge and this assignment of error is overruled.

Assignment of error No. XVII by Rustcraft insists that the Trial Court erred in permitting court reporter Mary Dantzler to authenticate the transcript of the criminal trial of Hager Odom and to permit portions thereof to be read to the jury by the plaintiff. We think this evidence was competent and the assignment of error is respectfully overruled.

Assignment of error No. XVIII by Rustcraft is that the Trial Judge erred in

permitting the plaintiff on cross-examination to put into evidence the testimony of defendant Russell Shelley given in the criminal case as to what he heard his wife say previously. This evidence was admissible for impeachment of the defendant Shelley and wife and also as evidence relating to the alleged conspiracy. If error at all, this was harmless error, and the assignment is overruled.

All of the appellants insist that the jury returned an invalid verdict because it was a quotient or gambling verdict. The misconduct on the part of the jury alleged is that the amount submitted by each juror was added and the total divided by twelve and it was agreed by the jury in advance that this would be the verdict of the jury. Appellants cite and rely upon the cases of Elledge v. Todd, 20 Tenn. (1 Humphreys) 43; Bennett v. Baker, 20 Tenn. (1 Humphreys) 399; 34 Am.Dec. 655; East Tenn. & Western N. C. Railroad v. Winters, 85 Tenn. 240, 1 S.W. 790. Approximately ten of the jurors testified at the hearing on the motion for a new trial. The substance of their testimony was that after each of the jurors had decided that there had been a conspiracy and that the plaintiff was entitled to recover damages and after each juror had given a tentative figure, it was agreed that the foreman would add the totals of all the amounts suggested by the various members of the jury and arrive at an amount which one of the jurors characterized as a "ball park figure" which they could then discuss and might agree upon. This was done and the jurors, after discussion, did agree upon the average amount which they then apportioned between compensatory damages and punitive damages as hereinabove set out. Each juror emphasized that he was satisfied with the verdict as rendered and if the average amount had been too high, he would not have approved it.

A verdict arrived at by averaging various figures is not, in and of itself, illegal. It is only when there is an antecedent agreement, express or implied, to abide by the results that a quotient verdict will be vitiated. On the authority of Mayor and Aldermen of the Town of Morristown v. Inman, 47 Tenn.App. 685, 342 S.W.2d 71, we overrule the assignment of error.

Defendants Rustcraft Broadcasting Company and Mr. and Mrs. Shelley insist that the verdicts, as rendered by the jury, are excessive and so excessive as to indicate passion, prejudice or unaccountable caprice on the part of the jury. The plaintiff is an honor graduate of the University of Tennessee School of Law; he is 51 years of age; he has been humiliated and embarrassed by the false charges of being a sex pervert; his law practice has dwindled to a few hundred dollars per year; it will take many years for the plaintiff to rebuild his law practice and remove the stigma which has been placed upon him by the unlawful acts of the defendants. The compensatory damages awarded the plaintiff are not excessive and the assignments of error relating thereto are expressly overruled.

The appellant Rustcraft, by assignment of error XXI, insists that the Trial Judge erred in permitting into evidence the life expectancy tables for Mr. Odom since there was neither allegation nor proof about personal injuries resulting in permanent disability. We are not cited to any authority by the appellants in support of this assignment of error nor have we, by our search, been able to find any case analogous upon the facts.

Mr. Prosser, in his celebrated textbook on torts, first edition, 1941, page 883, states that malicious prosecution is analogous to libel or the kind of slander which is actionable without proof of damage and recovery of damages may be had without proof of actual harm to plaintiff's reputation, humiliation and other mental suffering or injury to his feelings. See also Thompson v. Schulz, 34 Tenn.App. 488, 240 S.W.2d 252. We hold that it was proper for the jury to consider the age of the plaintiff and his life expectancy in arriving at the amount of damages he should be awarded for the

pain, suffering, humiliation, and embarrassment which he has sustained to the date of the trial and which he will sustain in futuro. The assignments of error, therefore, are respectfully overruled.

Finally, all of the appellants contend that the Trial Court erred in not directing a verdict on Count 2 of the declaration which is the punitive damages count in that more than one defendant was sued and the financial worth of only one defendant was shown. As above stated, the jury awarded punitive damages of $45,000.00 against all of the defendants. Plaintiff proved the net worth of one of the defendant publishing forms to be over $600,000.00. There was no proof of the net worth of the other defendants.

Under Tennessee law separate judgments may not be awarded against joint tort feasors. N. C. & St. L. Railway v. Jones, 100 Tenn. 512, 45 S.W. 681; Donegan v. Beasley, 27 Tenn.App. 369, 181 S.W.2d 379.

While the allowance of punitive or exemplary damages has been criticized by the text writers, the majority of the states including Tennessee allow punitive damages. Prosser on Torts, First Edition, 1941, page 13. Many courts throughout the nation allow punitive damages against the master or principal for the malicious acts of an agent or servant only when the master or principal has authorized or ratified the act of the agent or servant, or when there is a contractual relation between the plaintiff and the master. 22 Am.Jur.2d, Damages, Section 257, page 350. However, the State of Tennessee has expressly rejected such a rule. See Memphis Street Railway Co. v. Stratton (1915), 131 Tenn. 620, 176 S.W. 105.

It is the duty of the Trial Court to determine whether there is material evidence which would justify the award of punitive damages but the allowance of such punitive damages is a matter of discretion with the jury. Hughes, et al. v. Taylor (1946), 29 Tenn.App. 548, 198 S.W.2d 337. Punitive damages are placed upon a defendant for

his wrong conduct and with a view to preventing similar wrongs in the future. They are not allowed as a matter of course but only where there are some features of aggravation as where the wrong was done wilfully and maliciously under circumstances of rudeness or oppression or in a manner which evinces wanton and reckless disregard of the plaintiff's right. Liberty Mutual Ins. Co. v. Stevenson (1963), 212 Tenn. 178, 368 S.W.2d 760, and Booth v. Kirk (1963), 53 Tenn.App. 139, 381 S.W.2d 312.

Finally, the appellants contend that a joint judgment for punitive damages against all the defendants cannot stand because the financial standing of only one defendant was proven by the plaintiff. The majority rule was announced in the leading case of Washington Gas Light Co. v. Lansden (1898), 172 U.S. 534, 19 S.Ct. 296, 43 L.Ed. 543. The minority rule which allows a joint judgment for punitive damages against two or more defendants even though the financial standing of all the defendants was not proven is announced in the leading case of Interstate Company, et al. v. Garnett (1929), Miss., 122 So. 756, 63 A.L.R. 1402.

Our Tennessee Courts are committed to the rule that financial status of a defendant may be considered along with other facts in assessing punitive damages. Telephone & Telegraph Co. v. Shaw, 102 Tenn. 313, 52 S.W. 163; Suzore v. Rutherford (1952), 35 Tenn.App. 678, 251 S.W.2d 129; and McDonald v. Stone (1958) 45 Tenn.App. 172, 321 S.W.2d 845. However, our Tennessee Courts have never had occasion to rule on the precise question presented here.

This Court upheld a joint judgment for punitive damages in the case of International UAW, etc. v. American Metal Products Company (1965), 56 Tenn.App. 526, 408 S.W.2d 682. In the American Metal Products case there was no motion for a directed verdict on the count for punitive damages. The Washington Gas Light case

was discussed in the American Metal Products case only in the relationship to the admissibility of certain evidence but the Washington Gas Light case was not analyzed or discussed with reference to the legality of a joint judgment for punitive damages.

We hold the better rule to be the minority rule as stated in the opinion of Judge Handy in Bell v. Morrison, 27 Miss. 68, as follows:

"It is settled by authorities almost without exception, in England and in the United States, that in actions for injuries to the person or to the character, the jury are not restricted, in giving damages, to the actual, positive injury sustained by the plaintiff, but may give damages as a punishment against the defendant; that not only may the plaintiff receive compensation for the injury inflicted upon him, but that the interest of society may be regarded, and such damages may be awarded as will tend to operate by way of example, and to deter others from similar acts of violence and oppression. See Sedgwick on Damages, 39 et seq., and cases there cited.

"If this rule, which is sanctioned by so many high authorities, be just and salutary, it can only be properly and effectively applied by taking into consideration all the circumstances, whether of aggravation or mitigation of the grievance complained of, the situation of the parties as to wealth, character, and influence, and awarding such damages, in view of all these circumstances, as will both render reparation to the plaintiff, and act as an adequate punishment to the defendant. The damages which would operate as a proper punishment to one man might be inadequate to that effect upon another, by reason of their difference in pecuniary condition; and on the contrary, a verdict that would be scarcely regarded by a wealthy man, might be ruinous to a poor man. Hence the necessity, if the principle of exemplary damages be sound, to inquire into the pecuniary condition and circumstances of the defendant, in order, if the jury consider the case worthy of being made an example of, that the verdict may at once be adequate to the injury done to the plaintiff and to society, and just and reasonable to the defendant.

"The action was for the joint tort of the defendants, who joined in their pleas. In such a case, it is held to be proper for the jury to assess damages against all the defendants jointly, according to the amount which, in their judgment, the most culpable of them ought to pay. 2 Greenl. Ev. sec. 277. Whatever, therefore, would be competent evidence with that view as to one, would be competent as to all of the defendants. Otherwise a wealthy defendant, who was principally implicated in a wrong of this character, might escape the payment of just and reasonable damages by having others, without character or property, associated in the unlawful act. We therefore think that this evidence was properly submitted to the jury."

Since society is also served by the award of punitive damages, we hold that a plaintiff should not forfeit his right to join joint tort feasors in one suit in order to recover punitive damages. We also hold that the introduction of evidence of financial condition and net worth of one or more defendants is optional both to the plaintiff and to each defendant.

The assignments of error of all the defendants below are overruled.

## APPEAL OF PLAINTIFF HAGER ODOM

This Court filed an opinion in this case May 1, 1973, which was withdrawn on our own motion after it was called to our attention that we did not discuss the assignments of error of Mr. Odom. This has been a difficult case. We have had many conferences and more than one proposed

opinion has been drafted. The cover sheet of one of the earlier drafts was inadvertently placed on the opinion filed May 1, 1973.

Plaintiff Odom insists that not only should the $95,000.00 remittitur suggested by the Trial Judge be restored but that this court should also make an additur which the Trial Judge refused to make.

This Court does not have authority to make an additur where the Trial Judge refused to make one. Loftis v. Finch (1973), Tenn.App., 491 S.W.2d 370.

This Court does have authority to reinstate all or part of the remittitur suggested by the Trial Judge. Murphy Truck Lines v. Brown, 203 Tenn. 414, 313 S.W.2d 440.

Plaintiff's damages cannot be evaluated as closely as damages for personal injuries. He will suffer embarrassment and humiliation for the remainder of his life. We hold that the remittitur suggested by His Honor the Trial Judge was too much and $25,000.00 thereof should be restored.

Judgment will be entered for plaintiff for $150,000.00 with interest from date of trial below. The costs will be taxed against the defendants.

MATHERNE and NEARN, JJ., concur.