IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 9, 2013 Session

# WILLIAM H. WORLEY, ET AL. v. RARITY COMMUNITIES, INC., ET AL.

**Appeal from the Circuit Court for Marion County**
**No. 18299      Buddy D. Perry, Judge**

---

**No. M2012-01373-COA-R3-CV - Filed July 29, 2013**

---

Following a trial where Plaintiffs were awarded compensatory and punitive damages, Defendants filed a motion seeking a new trial based on juror misconduct. Defendants alleged the jurors arrived at the punitive damages amount using a quotient, or gambling, verdict. The trial court denied Defendants' motion for a new trial and Defendants appealed. We affirm the trial court's judgment because the jurors' affidavits indicate that not all jurors agreed in advance to be bound by the mathematical process involved in arriving at a quotient verdict.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Gerald L. Gulley, Jr., Knoxville, Tennessee, for the appellants, Rarity Communities, Inc., Nickajack Shores Holdings, LLC, and Michael L. Ross.

John P. Konvalinka, David E. Harrison, Katherine H. Lentz, Chattanooga, Tennessee, for the appellees, William H. Worley, Rebecca A. Worley, and Bill Worley Construction Co., Inc.

**OPINION**

William H. Worley, Rebecca A. Worley, and Bill Worley Construction Co., Inc. (together, "Plaintiffs") filed an action against Rarity Communities, Inc., Nickajack Shores Holdings, LLC, and Michael L. Ross (together, "Defendants"), asserting breach of contract, negligent misrepresentation, fraud, and violation of the Tennessee Consumer Protection Act in connection with Plaintiffs' purchase from Defendants of real estate in Marion County, Tennessee. The jury returned verdicts finding Plaintiffs were entitled to compensatory damages in the amount of $1,801,875 and punitive damages in the amount of $3,875,000.

Defendants filed a post-trial motion in which Defendants argued juror misconduct required they be granted a new trial.[1]  The trial court denied their motion, and Defendants appeal, arguing the jurors improperly used a mathematical average to determine the amount of punitive damages the court should award, which is known as a "quotient" or "gambling" verdict.

A party seeking a new trial based on juror misconduct has the burden of proving the misconduct by a preponderance of the evidence.  *Cullum v. Baptist Hospital Systems, Inc.,*2011 WL 553768, *4 (Tenn. Ct. App. Feb. 16, 2011); *Smith v. Gann*, 1993 WL 21988, at *2 (Tenn. Ct. App. Feb. 3, 1993).  An appellate court reviews a trial court's denial of a motion for a new trial using an abuse of discretion standard.  *Ali v. Fisher*, 145 S.W.3d 557, 564-65 (Tenn. 2004) (citing *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003)).  A trial court abuses its discretion only when it "applie[s] an incorrect legal standard, or reache [s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999).  An appellate court may not substitute its judgment for that of the trial court when reviewing a trial court's decision under an abuse of discretion standard. *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998).

"Where jurors agree in advance to adhere to an unknown amount to be determined by adding their separate proposals and dividing the sum by the number of jurors, the resulting verdict is invalid and must be set aside."  *Smith v. Gann*, 1993 WL 21988, at *1 (Tenn. Ct. App. Feb. 3, 1993) (citing *Elledge v. Todd*, 20 Tenn. (1 Humph. ) 43 (1839)).  A verdict reached through this process is known as a quotient, or gambling, verdict. *Cullum*, 2011 WL 553768 at *4.  All of the jurors must agree in advance to be bound, or the verdict is not a quotient verdict. *See Odom v. Gray*, 508 S.W.2d 526, 532 (Tenn. 1974) (simply averaging various figures to reach a verdict is not illegal; the antecedent agreement to be bound by the result is what causes verdict to be impermissible quotient verdict).

> [A] quotient verdict requires the condition precedent that all jurors must agree
> to be bound by the outcome or the process is merely a part of the jury's
> deliberations, even when the result is eventually submitted as the verdict of the
> jury.

*Young v. Norfolk S. Ry., Co.*, 1999 WL 1059700, at *4 (Tenn. Ct. App. Nov. 19, 1999).

---

[1]Defendants asserted several grounds to support their motion for a new trial, but the only issue Defendants appeal is that the trial court erred in failing to grant them a new trial based on juror misconduct.

Defendants in this case submitted five juror affidavits in support of their argument that the verdict for punitive damages was an impermissible quotient verdict. Two jurors testified to the following in their affidavits:

4. After discussing various options to set the amount of punitive damages, one juror suggested that all of us choose an amount and that we would then total those amounts and divide that total by twelve, the number of jurors, to reach the average amount which would be used. Once that was suggested, several jurors agreed that was a good method.

5. We then reached an agreement ourselves that we would follow that process to set the amount of punitive damages.

6. Following that agreement, we then each gave an amount that we believed was what the amount of punitive damages should be. The foreman and one other person, separately, then totaled the amounts and divided the total by twelve to reach the final amount.

7. Once that process was completed, we did not modify the amount, and we proceeded to notify the bailiff that we had reached a decision on the amount of the punitive damages.

Three other jurors stated the following in their affidavits:

4. We could not reach an agreement on the amount of punitive damages. After discussing various options to set the amount of punitive damages and to avoid a hung jury, one juror suggested that all of us choose an amount and that we would then total those amounts and divide that total by twelve, the number of jurors, to reach the average amount which would be used. Once that was suggested, several jurors agreed that was a good method. Prior to that time, we all had different numbers for the punitive damages award.

5. We then reached an agreement amongst ourselves that we would follow that process to set the amount of punitive damages and be bound by it.

6. Following that agreement, we then each gave an amount that we believed was what the amount of punitive damages should be. The foreman and one other person, separately, then totaled the amounts and divided the total by twelve to reach the final amount.

-3-

7. Once that process was completed, we did not modify the amount, and we proceeded to notify the bailiff that we had reached a decision on the amount of the punitive damages.

In opposition to Defendants' motion, Plaintiffs submitted affidavits from three other jurors who disagreed that all of the jurors agreed in advance to use a mathematical process to determine the amount of punitive damages. One of the affidavits submitted by Plaintiffs stated:

4. We discussed the issue of punitive damages and each juror gave his or her opinion as to the amount of punitive damages to be awarded. Initially, there was a wide range in the amount of possible punitive damages awards among the jurors.

5. One juror suggested that we total each juror's punitive damage amount and divide the total by the number of jurors to reach an average. We did this, however, to show ourselves that, in reality, we were not that far apart and we could reach a consensus as to the amount of punitive damages that night.

6. After getting an average, we then adjusted that amount by adding and/or deducting money to the amount based on several facts including taking into consideration the amount we had announced as the Worley's compensatory damages, the issue of piercing the corporate veil, etc.

7. We did not agree to use the average as the final amount of punitive damages.

8. The average was not the final amount of punitive damages announced by the jury foreperson. The average was around $5,000,000.00 and, therefore, was higher than the final amount of punitive damages that the jury awarded.

Another juror affidavit Plaintiff submitted was similar and included the following:

5. One juror suggested that we total each juror's punitive damage amount and divide the total by the number of jurors to reach an average.

-4-

6.   After getting an average, we then tweaked that amount by adding and/or deducting money to the amount based on several facts including Defendants failure to finish any of the amenities at The Rarity Club and the

fact that the Worleys had to use their entire savings to make interest payments.

7.   We did not agree to use the average as the final amount of punitive damages.

8.   The average was not the final amount of punitive damages announced by the jury foreperson, and, in fact, the average was higher than the final amount of punitive damages the jury awarded.

The final juror affidavit Plaintiffs submitted stated:

4.   We discussed the issue of punitive damages extensively and each juror gave an opinion as to the amount of punitive damages to be awarded.

5.   I am not aware that jurors used or took an average to reach the amount of punitive damages.

6.   I did not agree to participate in averaging each juror's amount nor did I agree to be bound by an averaged amount for the award of punitive damages.

7.   To determine the amount of punitive damages, we reached an amount and deducted and/or added money to the amount based on several facts including the amount of money diverted from The Rarity Club project by Defendants, Defendants failure to finish any of the amenities at The Rarity Club, the fact that the Worleys still own property and a custom home at The Rarity Club, etc.

Defendants argue the court erred in denying their motion for a new trial because a preponderance of the evidence demonstrated an antecedent agreement to be bound by an average damages verdict. Defendants argue they "had the greater number of witnesses of equal credibility" because they submitted five juror affidavits in support of their position, whereas Plaintiffs submitted only three juror affidavits in support of their position.

The number of affidavits or witnesses is not persuasive in this context, because the law regarding quotient verdicts is that **all** jurors must agree in advance to be bound by the

verdict reached through the process of averaging the individual jurors' figures and dividing that number by the number of jurors. Several jurors denied they ever agreed in advance to the averaging. If only a portion of the jurors agreed to be bound by this outcome, as the jurors' affidavits indicate was the case here, the verdict reached is not a quotient, or gambling, verdict, and there is no resulting juror misconduct.

The trial court did not abuse its discretion in denying Defendants' motion for a new trial, and we affirm the trial court's judgment. Costs of appeal are assessed against the appellants, Rarity Communities, Inc., Nickajack Shores Holdings, LLC, and Michael L. Ross, for which execution shall issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE