## EARL AVERILL, JR., et al. v. LYLE LUTTRELL.— 311 S. W. (2d) 812.

Eastern Section. July 9, 1957.

Certiorari denied by Supreme Court February 6, 1958.

Jack Norman, Nashville, for plaintiff in error.

Dietzen, Graham, Dietzen & Brock, Chattanooga, for defendant in error.

HOWARD, J. The parties will be referred to as they appeared in the trial court.

In this action the plaintiff, Lyle Luttrell, a professional baseball player with the Chattanooga Baseball Club, sued the defendants, Nashville Baseball Club, a Corporation, and Earl Averill, Jr., one of its players, for damages for an assault and battery committed by Averill upon plaintiff during the playing of one of the regularly scheduled games between these two teams at Engel Stadium, in Chattanooga, Tennessee, on the night of August 20, 1955. Both Clubs, known as the Chattanooga Lookouts and Nashville Vols, are members of the Southern Baseball Association.

Plaintiff's declaration alleges in substance that the defendant, Earl Averill, Jr., without reasonable cause or justification, struck plaintiff from behind with such force and violence that he not only suffered a fractured jaw but was rendered unconscious from the blow, and that said defendant was at the time "acting within the scope of his employment as the agent, servant, or employee of the Nashville Baseball Club, and in furtherance of its said business," and plaintiff sued said defendants for both compensatory and punitive damages.

Defendants separately filed pleas of general issue and numerous special pleas denying liability.

At the conclusion of plaintiff's proof motions for directed verdicts made on behalf of both defendants were overruled, and the Nashville Baseball Club electing to stand on its motion did not introduce any evidence. The trial resulted in a jury verdict for the plaintiff against both defendants for $5,000, and motions for a new trial having been made and overruled, only the defendant Nashville Baseball Club has appealed. No questions are made regarding the extent of plaintiff's injuries or the amount of the verdict.

By assignments of error it is urged on behalf of the Nashville Baseball Club that the trial court should have sustained its motion for a directed verdict made at the conclusion of plaintiff's proof, because plaintiff introduced no evidence that the assault committed by Averill was within the scope of his employment, or in the prosecution and furtherance of the business of this defendant.

According to the undisputed proof the assault occurred during the 6th inning of the game while the plaintiff, who played the position of shortstop for the Chattanooga Lookouts, was batting for his team. Pitching for the Nashville Vols was Gerry Lane, a resident of Chattanooga, and catching was the defendant Averill. The contest between the teams was keen and the players as well as the fans were tense with excitement, some of which was probably due to Lane's pitching against his home town team. Lane had made three pitches known as curves or sliders, called by the Umpire as "balls," and on each Luttrell had stepped forward to meet the ball before the break or curve started. These balls barely

missed Luttrell, who had to dodge, and his teammates and the crowd got the impression that he was being, in baseball parlance, "dusted off" by Lane, who on his fourth pitch hit Luttrell on the seat of his pants.

The incidents leading up to the assault were described by Luttrell as follows:

"I had been at bat once before this happened, and I stand in the back of the batter's box usually when I am hitting. The batter's box is six feet long and four feet wide, and the first time at bat Lane threw me curved balls and sliders outside which it is hard to hit if you are standing back in the batter's box, so I don't know whether he struck me out or what, but he made me look bad, anyway, by swinging and reaching, so I thought within myself before I got up the next time that I'd get up there and I'd stand in the same position and after the catcher give his sign I'd take a step forward in the box to try to hit the pitch before it broke, put it to right field. So I got in the box as I always did, in the back of the box, and Averill gave his sign and Lane took his windup before he threw the ball and just before he released the ball I stepped a step forward and he threw the ball, and I don't know what Averill called, what sign he called or anything, but the ball came at me and I had to dodge. Well, after he got the ball back from Averill he told me in exactly these words from the mound, he says, 'Nobody does that to me. If you do it again I'll stick it in your ear.'

"So, I had been hit in Little Rock with a pitched ball right here (indicating) and * * * I was in the hospital and I had my jaw wired and I was out of

the lineup for some time. So when he told me that I knew he was throwing at me, at my head. So I got back in the box the same way as I had. I never said a word to him or Averill, but I just looked Lane right in the eye. I looked squarely at him more or less to say 'I'm within my rights.' I got back in the box the same way and I took a step forward again and he threw at me, again I had to dodge. The third pitch was the same way, I dodged three of them. The fourth pitch, he brushed me right here (indicating), come right across in this area (indicating) and nicked me, never hurt me a bit but I was entitled to my base because he hit me. I don't know where the ball went, to the catcher, to the screen or what, I never seen the ball. But after the ball hit me I, in disgust, I knew that he was throwing at me because he told me he was, and * * * I wanted to show that I didn't appreciate it, which I didn't because I was making my living playing baseball. When a guy says he's throwing at my head he can kill you if he hits you in the right place. So, I started to throw the bat towards him and I don't know yet, I don't know to this day what made me hold up, but I held up, the bat went loose and I don't know where it went because I never seen it. I was faced toward the pitcher and that's all I remember.''

It appears that immediately after Luttrell threw his bat in the direction of the pitcher's mound that Averill, without any warning whatsoever, stepped up behind Luttrell and struck him a hard blow on the side or back of the head with his fist. The force of the blow rendered Luttrell unconscious, and on falling face first to the ground he sustained a fractured jaw. Thereafter the

players and the fans generally, who rushed out upon the field, engaged in what was described as a "free for all" until the police arrived in sufficient force to restore order, after which the game was continued. Meantime Luttrell was removed by ambulance to the hospital, and Averill, who was put out of the game by the umpire, was arrested.

It was undisputed that there was no previous "animosity or malice" between Averill and Luttrell, who testified that when they spoke "it was on friendly terms." Nor was there any proof showing that Averill had ever committed a similar act, or that his employer should have anticipated his unwarranted assault.

It was conceded that the assault made by Averill "was no part of the ordinary risks expected to be encountered in sportsmanlike play." Nor was there any proof showing that the assault was other than a wilful independent act on Averill's part, entirely outside the scope of his duties. The assault was neither incident to nor in the furtherance of his employer's business, and under the circumstances we think that the Nashville Baseball Club would not be liable under the doctrine of respondeat superior, and that the learned trial judge should have sustained the defendant's motion for a directed verdict made at the conclusion of the plaintiff's proof.

It seems to be the rule generally that a master is not liable for the wilful acts of his servant who steps aside from his master's business and commits an act wholly independent and foreign to the scope of his employment. Goff v. St. Bernard Coal Co., 174 Tenn. 558, 129 S. W. (2d) 205; Terrett v. Wray, 171 Tenn. 448, 105 S. W. (2d) 93; Standard Tire & Battery Co. v. Sherrill,

170 Tenn. 418, 95 S. W. (2d) 915; Hoover Motor Express Co. v. Thomas, 16 Tenn. App. 664, 65 S. W. (2d) 621; Hunt-Berlin Coal Co. v. Paton, 139 Tenn. 611, 202 S. W. 935; Woody v. Ball, 5 Tenn. App. 300; Druffenbroch v. Lawrence, 7 Tenn. Civ. App. 405; 35 Am. Jur. Sec. 552, p. 983; 57 C. J. S. Master and Servant secs. 570, 572, 574, 575, pp. 313, 322, 323, 341; Annotation 34 A. L. R. (2d) 402, et seq.

The applicable rule is stated in 57 C. J. S., as follows:

"It is not ordinarily within the scope of a servant's authority to commit an assault on a third person, and, in the absence of a nondelegable duty, such as that imposed by the relationship of carrier and passenger, or hotel and guest, if the assault committed by the servant was outside the scope of his employment and was made in a spirit of vindictiveness or to gratify personal animosity, or to carry out an independent purpose of his own, the master is not liable, unless the servant's conduct is ratified by the master." Sec. 575, p. 341.

In support of the above rule, there are numerous cases cited in the footnotes, including Hoover Motor Express Co. v. Thomas, supra, and Atlanta Baseball Co. v. Lawrence, 38 Ga. App. 497, 144 S. E. 351, 352, in which the Court said:

"The conduct of McLaughlin, the pitcher, in leaving his place upon the grounds and coming into the grandstand, and assaulting the plaintiff, was not within the scope of his employment, nor in the prosecution of his master's business, but was his own personal affair in resenting a real or fancied insult. 'If

a servant steps aside from his master's business, for however short a time, to do an act entirely disconnected from it, and injury results to another from such independent voluntary act, the servant may be liable; but the master is not liable.' Savannah Electric Co. v. Hodges, 6 Ga. App. 470, 65 S. E. 322. Under the circumstances described in the petition, McLaughlin's acts were not the acts of his master, and the latter cannot be held liable under the doctrine of respondeat superior, or the master and servant theory.'' (Citing cases).

Accordingly, for reasons indicated, the judgment against the Nashville Baseball Club will be reversed, and the suit as to this defendant will be dismissed at plaintiff's costs.

McAmis, P. J., and Hale, J., concur.