Albert **HYDE**

v.

**BAGGETT TRANSPORTATION COM-
PANY, Inc.**

**Civ. A. No. 4236.**

United States District Court
E. D. Tennessee, S. D.

Nov. 21, 1964.

Joe F. Timberlake, Jr., Jack R. Brown, Chattanooga, Tenn., for plaintiff.

W. D. Spears, Chattanooga, Tenn., for defendant.

FRANK W. WILSON, District Judge.

This is an action in which the plaintiff seeks to recover for personal injuries alleged to have arisen out of an assault and battery committed upon the plaintiff by one Dave L. Miller. The altercation between the plaintiff and Miller occurred upon October 6, 1963, while they were working at a truck terminal in Chattanooga, Tennessee. The plaintiff has herein sought to recover both compensatory and punitive damages from the defendant, Baggett Transportation Company, Inc., both upon the theory of negligence in the employment of Miller and upon the theory of liability under respondeat superior for the willful tort of Miller. The case was submitted to the jury upon

special issues and the jury returned a verdict for the plaintiff and against the defendant, both upon the negligence theory and upon the respondeat superior theory and awarded the plaintiff a judgment of $2,000.00 compensatory damages and $1,000.00 punitive damages. The case is now before the Court upon the defendant's motion for judgment n. o. v. or in the alternate for a new trial.

It appeared from the undisputed evidence in the case that at the time of the altercation between the plaintiff and Miller, both of them were employees of the Chattanooga Service Company, a corporation which operated the local terminal company for Baggett. Miller was a dock foreman and the plaintiff was a dock worker under the supervision of Miller. The fight occurred between Miller and the plaintiff when Miller instructed the plaintiff to unload a trailer and the plaintiff protested that he needed additional help.

In the first ground of the defendant's motion it is contended that there was insufficient evidence to support the verdict of the jury that Chattanooga Service Company was an agent of Baggett rather than an independent contractor, as contended by the defendant. The Court is of the opinion that this ground is without merit and should be overruled. The testimony was to the effect that the trucking terminal building where the altercation occurred was owned by one Jefferson Properties, Inc., and leased to Baggett, whose name the terminal bore. At all times relevant to the issues in the lawsuit one C. F. Pate was employed by Baggett as its terminal manager in Chattanooga. Pate had in turn organized a one-man corporation, of which he was the sole stockholder, known as "Chattanooga Service Company". This corporation, of which Pate was the president and managing officer, in turn had an agreement with Baggett whereby it employed the personnel to operate the terminal upon a cost plus basis. There was testimony with regard to Baggett's efforts to control the expenses by reducing overtime and loading and unloading time. Under this state of the record, the Court is of the opinion that a jury issue existed with regard to whether Chattanooga Service Company was an agent of Baggett.

It is next contended by the defendant that the evidence is insufficient to support a verdict that Miller was acting within the scope of his employment in committing an assault and battery upon the plaintiff. It is often stated as a general rule, with certain exceptions, that a master is not liable for the willful torts of his servant since such conduct is deemed as a matter of law to be beyond the scope of employment.

These exceptions to the rule of no liability are set forth in the case of Fugate v. Cincinnati, New Orleans and Texas Pacific Railway Co., 181 Tenn. 608, 611, 183 S.W.2d 867, 868 (1941), where it is stated that

" * * * the willful tort of the servant could be imputed to the master in three classes of cases: (1) Where the master is under contract, expressed or implied, with the person wronged, or under a law-imposed duty, requiring the master to refrain from mistreatment of him; for example, assaults upon passengers by railway employees. (2) Where the nature of the employment or the duty imposed on the servant is such that the master must contemplate the use of force by the servant in performance, as a natural or legitimate sequence; for example, cases involving assault and homicides by special officers in the master's employ. (3) Where a dangerous instrumentality is intrusted by the master to the servant, which has capability of harm to the public, such as a locomotive whistle willfully sounded."

The defendant contends that the facts of this case clearly do not fall within one of these exceptions in that there was no showing that Miller was authorized or directed to use force in maintaining order or discipline among his men and that there was no showing that be-

ing a dock foreman for Chattanooga Service was the kind of employment out of which the employer might reasonably expect or contemplate that force might be used in maintaining order or discipline. It would appear to the Court that if these exceptions to the general rule of no liability accurately reflect the existing law of Tennessee, then there could be no liability legally imposed upon the defendant.

However, the modern trend has been to extend the liability of a master for the willful torts of his servant. Mechem on Agency, 4th Ed., Sec. 397; Prosser on Torts, 2d Ed., page 354; 6 Am.Jur. 2d, Assault and Battery, Sec. 136; 35 Am.Jur., Master and Servant, Sec. 573. According to these authorities modern cases treat the liability of the master for the willful torts of a servant upon the same basis as liability for negligence —that is, as dependent upon whether or not the employee or servant was acting within the scope and course of his employment. This would ordinarily be a question of fact for the jury. Southern Railway Company v. Jones, 228 F.2d 203 (C.A. 6, 1955); 6 Am.Jur.2d, Assault and Battery, Sec. 136.

The question arises as to whether Tennessee still adheres to the law reflected in the Fugate case, supra, or whether it has joined the modern and more logical trend in treating the liability of the master for a willful tort as dependent upon whether or not the servant was acting within the scope of his employment. The logic of so holding would seem apparent. The same reasons which would justify imposing vicarious liability upon an employer for the negligent wrongs of an employee acting within the scope of his employment would likewise justify imposing vicarious liability upon an employer for the willful wrongs of an employee acting within the scope of his employment. The degree of control that the employer would be able to exercise to avoid the commission of willful torts by his employees would certainly equal if not exceed the degree of control which

he might exercise to avoid the commission of negligent torts by his employees.

█ In the case of Anderson v. Covert, 193 Tenn. 238, 245 S.W.2d 770 (1952), a night employee of a restaurant or a small lunchroom evicted a customer who had become disorderly and in so doing gave the customer a brutal beating. The Court of Appeals affirmed the trial court's submission of the case to the jury upon proper charge. The Supreme Court of Tennessee denied certiorari upon technical grounds and in so doing made the following observations:

"Defendant relies on the case of Hunt-Berlin Coal Co. v. Paton, 139 Tenn. 611, 202 S.W. 935, and asserts that in this case the master is not liable for the wilful tort of his servant because the facts of the present case do not bring it within one of the three exceptions noted in the Hunt-Berlin case. I agree with the Court of Appeals that the Hunt-Berlin case is not controlling. The eviction here was made by Miller from defendant's restaurant, as an incident of his employment. The employee lost his temper and used more force than was necessary to evict the plaintiff, but the tort was committed as an incident of the employment and in the course thereof. The admitted facts of the case here bring it squarely within the rule approved in Terry v. Burford, 131 Tenn. 451, at page 468, 175 S.W. 538, 542 L.R.A. 1915 F, 714, where the following statement of law from a New York case is approved:

\* \* \* \* \*

"'The rule recognized in all the recent cases, and which does not materially conflict with any of the older decisions, although it may qualify some of the intimations and casual expressions or illustrations of the judges, is that for the acts of the servant, within the general scope of his employment, while engaged in his master's business, and done with a view to the furtherance of that business and the master's interest,

the master will be responsible, whether the act be done negligently, wantonly, or even willfully. In general terms, if the servant misconducts himself in the course of his employment, his acts are the acts of the master, who must answer for them.' "

Thus, it would seem clear that Tennessee has abandoned the narrow exceptions to the general rule of no liability and liability may now be imposed upon the employer where the servant is found to be acting in furtherance of the general scope of his employment and in the interest of his master. If the assault were neither incident to nor in furtherance of the employer's business, no liability could, of course be imposed. Averill v. Luttrell, 44 Tenn.App. 56, 311 S.W.2d 812 (1957).

The Court, in the case of Earley v. Roadway Express, 106 F.Supp. 958 (D.C. Tenn., 1952), pointed out the exceptions to the old rule of no liability and stated that

"A variation of * * * (these) exception(s) may be found where the ·force employed by the servant in the commission of the willful tort is done with a view to the furtherance of the business in which he is engaged, and in the master's interest. Anderson v. Covert [193 Tenn. 238] 245 S.W.2d 770."

It has likewise been held that where an employee in a supervisory capacity commits an assault upon an "inferior" or subordinate employee while the supervisor is engaged in supervising and directing the work the employer may be held liable for the assault. 35 Am.Jur., Master and Servant, Sec. 200.

■ The evidence in this case reflected that the altercation between Miller and the plaintiff occurred when Miller, in his capacity as dock foreman, instructed the plaintiff to unload a trailer and the plaintiff insisted he needed additional help in doing so. An argument occurred which resulted in Miller and the plaintiff

engaging in a fight. Under this state of the record, a jury issue existed both as to whether an actionable assault and battery was committed by Miller and, if so, whether Miller was acting in the course and scope of his employment at the time so as to charge Baggett with liability therefor.

■ The remaining four grounds in the defendant's motion relate to the alleged insufficiency of the evidence to support the verdict of the jury upon the issues of negligence and gross negligence. The evidence with respect to the status of Chattanooga Service Company, Inc., as an agent or independent contractor of Baggett in the employment and retention of Miller has been noted above. There was further testimony in the record to the effect that a delegation of employees reported to C. F. Pate, the President of Chattanooga Service Company, Inc., and the Terminal Manager for Baggett, within a month prior to the altercation between the plaintiff and Miller that Miller was being too aggressive in his supervision and treatment of other employees and that unless Pate took some action in this respect a fight would likely result, but that Pate had done nothing as a result of such advice. There was also evidence of three or four occasions upon which other employees had disagreements with Miller that approached the stage of an impending physical encounter, but there was no evidence of the employer having any notice of these incidents. Upon this state of the record the Court is of the opinion that a jury issue would exist as to negligence upon the part of Chattanooga Service Company, Inc., in the employment, supervision and retention of Miller, but that the record would not support a verdict of gross or wanton negligence in this respect. While the elimination of gross and wanton negligence would in turn eliminate a verdict for punitive damages based upon gross and wanton negligence, the verdict of the jury in favor of the plaintiff for the willful tort of assault and battery would support the award of punitive damages herein made.

The motion of the defendant for judgment n. o. v. or in the alternative for a new trial will accordingly be overruled as to each ground thereof and an order to this effect will enter.