James T. ROSS, Appellant,

v.

Stephen CLOUSER, Respondent.

No. 63248.

Supreme Court of Missouri,
En Banc.

Aug. 23, 1982.

William J. Raack, Clayton, for appellant.

John M. Goodwin, Thomas, Busse, Goodwin, Cullen, Clooney & Gibbons, St. Louis, Richard J. Mehan, Jr., Barnard & Baer, St. Louis, for respondent.

RENDLEN, Judge.

This is a damage suit for personal injuries sustained when plaintiff was knocked down during play in a softball game.[1] The trial court set aside the plaintiff's verdict, finding that plaintiff had assumed the risk of the collision and his only action lay for an intentional tort. The Court of Appeals, Eastern District, affirming, noted the Southern District's decision in *Niemczyk v. Burleson*, 538 S.W.2d 737 (Mo.App.1976), which held that a player injured in an athletic contest may recover for a fellow participant's *negligence*, but nonetheless concluded that recovery in athletic events should be limited to injuries caused by *intentional* acts. Recognizing the decisional conflict, the Eastern District ordered the cause transferred, and we review as though on original appeal. Art. V, § 10, Mo.Const.; Rules 83.02 and 83.09.

Plaintiff contends the trial court erred in granting judgment N.O.V. for defendant in that: (1) plaintiff did not assume the risk of collision with defendant; (2) defendant abandoned the affirmative defense of as-

---

1. While plaintiff's second amended petition alleged defendant "carelessly, negligently, and recklessly" dove into plaintiff, the case was submitted solely on a negligence theory.

sumption of the risk by failing to request an instruction submitting the issue to the jury; and (3) under the pleadings and evidence plaintiff made a submissible case in negligence.

During a slow pitch Church league softball game, defendant-baserunner collided with plaintiff-third baseman, causing severe injury to plaintiff's left knee, which led to the instant action. According to plaintiff's witnesses,[2] defendant was on first base and plaintiff was positioned a short distance toward left field from third base, perhaps four to five feet outside the base path. A ball from the next batter was hit past the second baseman and fielded cleanly by the short center who threw to plaintiff. Plaintiff stepped toward the outfield for the catch, and when he caught the ball, defendant had rounded second base by two or three steps. With the ball in his left glove, plaintiff leaned forward on his left leg to tag defendant, and at this point it was apparent that defendant could easily be tagged out. Defendant, having already rounded second base, continued to run very fast toward plaintiff, rather than third base, and when a few feet from plaintiff, dove head first through the air at plaintiff. Plaintiff was not blocking the base path and the two collided twelve feet from third base, six to eight feet outfield from the base path. Defendant's hip hit plaintiff's left knee causing plaintiff to roll toward the base path, and after the collision, defendant edged toward third base to tag up. While softball rules provide that if a runner travels too far outside the base path he will automatically be out, plaintiff did not drop the ball upon impact but completed the tag, making it unnecessary for the umpire to determine whether defendant was out for having left the base path. The extent of plaintiff's injuries including a crushed bone in the left knee indicated a severe force was applied.

Disputing plaintiff's account of the incident, defendant's witnesses[3] testified that the ball was hit to center field and stopped by an outfielder as defendant neared second base. After rounding second, defendant hesitated slightly, observing that the fielder's throw to a cut-off man was high and would not be caught by the intended receiver. Defendant, believing he could make it safely, headed for third but the cut-off man quickly retrieved the ball and threw to plaintiff who fielded it cleanly. About fifteen feet from third base, defendant realized he would be tagged if he continued running, so he stopped and, deciding to fake, slid feet first toward base. Defendant's feet struck plaintiff as he blocked the base path and plaintiff afterwards rolled over defendant toward the outfield.

The case was submitted on a negligence theory, under the following instruction.

### INSTRUCTION NO. 4

Your verdict must be for plaintiff if you believe:

First, defendant ran out of the normally travelled base path and suddenly dove at and into collision with plaintiff, and

Second, defendant's conduct, in the respect submitted in paragraph First, was conduct not ordinarily incident to the game being played, and

Third, defendant was thereby negligent, and

Fourth, as a direct result of such negligence, plaintiff sustained damage.

The plaintiff's verdict, assessing damages at $17,500, was set aside by the trial court and a judgment for defendant entered on the court's conclusion that as a matter of law plaintiff had assumed the risk of collision and only an action for an intentional tort, not mere negligence, could lie. From this judgment notwithstanding the verdict, plaintiff appealed.

■ We hold that the trial court erred in entering judgment for defendant but also conclude that a cause of action for personal injuries incurred during athletic competition must be predicated on recklessness, not

---

2. Plaintiff's account of the events was corroborated by two of his teammates.

3. The defense's version was described by defendant, three teammates, and Paul Holland, umpire of the game.

mere negligence, and on retrial the cause can be submitted on that theory only. In so holding, we find persuasive *Nabozny v. Barnhill*, 31 Ill.App.3d 212, 334 N.E.2d 258 (1975), which announced that a player is liable in tort if his conduct is "either deliberate, wilful or [demonstrates] a reckless disregard for the safety of the other player. . . ." *Id.* 334 N.E.2d at 261. In making that determination the Illinois court balanced the desire *not* to place an unreasonable onus on competitive sports participation, with the awareness that some restrictions must serve to limit overzealous conduct on the playing field. As stated in *Nabozny,*

> the law should not place unreasonable burdens on the free and vigorous participation in sports by our youth. However, we also believe that organized, athletic competition does not exist in a vacuum. Rather, some of the restraints of civilization must accompany every athlete onto the playing field. One of the educational benefits of organized athletic competition to our youth is the development of discipline and self control. *Id.* 334 N.E.2d at 260.

We are attracted to this analysis. Fear of civil liability stemming from negligent acts occurring in an athletic event could curtail the proper fervor with which the game should be played and discourage individual participation, yet it must be recognized that reasonable controls should exist to protect the players and the game. Balancing these seemingly opposite interests, we conclude that a player's reckless disregard for the safety of his fellow participants cannot be tolerated. If a plaintiff pleads and proves such recklessness, he may seek relief for injuries incurred in an athletic competition. *Niemczyk v. Burleson, supra,* to the extent it is inconsistent herewith, should no longer be followed. However, the factors enunciated by the Southern District in *Niemczyk*, which could render plaintiff's injury actionable, remain pertinent when the standard is recklessness, for whether a player's conduct gives rise to liability hinges upon the facts of the particular case. These factors include:

the specific game involved, the ages and physical attributes of the participants, their respective skills at the game and their knowledge of its rules and customs, their status as amateurs or professionals, the type of risks which inhere in the game and those which are outside the realm of reasonable anticipation, the presence or absence of protective uniforms or equipment, the degree of zest with which the game is being played, and doubtless others. . . . *Id.* at 741–42.

■ Plaintiff pled recklessness and while we do not decide the issue, it is reasonably arguable he made a case submissible under that allegation. However, because the case was mistakenly submitted and the jury found only on the issue of negligence, the cause is remanded for retrial under a theory of recklessness.

■ A plaintiff's assumption of the risk can be an affirmative defense to a charge of reckless conduct. Restatement (Second) of Torts §§ 496A and 503 (1965); Rule 55.08. Based on a voluntary consent, express or implied, to accept the danger of a known and appreciated risk, it bars recovery when plaintiff comprehended the actual danger and intelligently acquiesced in it. *Turpin v. Shoemaker*, 427 S.W.2d 485, 489–90 (Mo.1968).

■ In the case at bar, reasonable minds could have easily reached differing conclusions as to whether, based on the evidence, plaintiff assumed the risk of defendant colliding with him in the manner described. *See, Bourque v. Duplechin*, 331 So.2d 40 (La.App.1976), *cert. denied*, 334 So.2d 210 (La.1976). Accordingly, the trial court erred in stating that as a matter of law plaintiff assumed the risk, and if on retrial, the evidence follows the pattern of the record here, the question may be submitted for the jury's determination. *See, Gregory v. Robinson*, 338 S.W.2d 88, 91 (Mo.banc 1960).

The cause is reversed and remanded for a new trial consistent with the views expressed in this opinion.

SEILER, MORGAN, HIGGINS and BARDGETT, JJ., concur.

WELLIVER, J., dissents in separate dissenting opinion filed.

DONNELLY, C. J., dissents and concurs in separate dissenting opinion of WELLIVER, J.

WELLIVER, Judge, dissenting.

I respectfully dissent.

The evidence makes it clear that defendant's action constituted either an intentional tort or no tort at all. It therefore is unnecessary to decide whether participants in athletic events should be allowed to recover damages for injuries resulting from the acts of other participants that are not intentional but are either reckless or negligent. I agree with the principal opinion that mere negligence is an insufficient basis upon which to impose tort liability arising out of athletic competition. I am not as yet prepared to say that recklessness is a sufficient basis. That question is not necessary to a decision of this case, and I think it is unwise in advance of necessity to engrave into our law a new principle for the imposition of liability.

The yin-yang testimony elicited in this case would leave even an eyewitness to the event confused. The parties agree that plaintiff, the third baseman, was injured when defendant, the baserunner attempting to go from first base to third base on a hit to short center field, collided with him. Beyond that there is total disagreement. Plaintiff and two of his teammates claimed that plaintiff was twelve feet on the outfield side of third base when he received the throw from the short fielder and that defendant, after rounding second base, made no attempt to reach third but instead ran directly toward plaintiff and collided with him after making a head-first dive. De-

fendant, three of his teammates, and the umpire claimed that plaintiff was standing in the basepath approximately three feet on the second base side of third and that the collision occurred when defendant slid feet-first toward third in an effort to avoid plaintiff's tag and reach the base.

The two versions of the story are irreconcilable. If one accepts plaintiff's version, defendant's action rather obviously is an intentional tort, for which in the absence of consent plaintiff may recover. *See Griggas v. Clauson*, 6 Ill.App.2d 412, 128 N.E.2d 363 (1955) (basketball). *See also Averill v. Luttrell*, 44 Tenn.App. 56, 311 S.W.2d 812 (1957) (baseball). Plaintiff should be deemed to have consented to the contact unless the contact was prohibited "by rules or usages of the game if such rules or usages are designed to protect the participants and not merely to secure the better playing of the game as a test of skill." Restatement (Second) of Torts § 50 comment b (1965). *See Tavernier v. Maes*, 242 Cal.App.2d 532, 51 Cal.Rptr. 575 (1966) (softball). *See also* W. Prosser, Handbook of the Law of Torts § 18, at 101 (4th ed. 1971). If one accepts defendant's version of the facts, plaintiff has no basis for recovery whatsoever, because the contact was not prohibited by the rules or usages of the game. Defendant's conduct could not be considered negligent or reckless, and in any event plaintiff assumed any risk incident to the game. *Perkins v. Byrnes*, 364 Mo. 849, 853, 269 S.W.2d 52, 53 (1954).

It is unnecessary to hold in this case that a participant in an athletic event may recover damages for injuries resulting from the reckless conduct of another participant. That holding will do nothing more than open the door to needless litigation.[1] This

1. My own informal survey shows that in the City of Columbia, Missouri, for example, a total of 339 teams, 272 of which are composed of adults, participate in leagues sponsored by the Department of Parks and Recreation. Each team averages 15 persons, for a total of 5085 persons who participate in governmentally sponsored leagues. That figure does not include those persons who participate in church softball and other private leagues. The 1980

census shows the population of Columbia to be 62,061. If the same ratio is applied to Missouri's 1980 population of 4,917,444, there are potentially 402,738 persons who participate in only governmentally sponsored softball leagues. Each of those persons, as well as those who participate in church and other private leagues, conceivably could be a plaintiff under the rationale of the principal opinion.

case should be reversed and remanded for a new trial with proper instruction of the jury as to intentional tort, consent, and assumption of risk. The question of recklessness, not present in this case and unnecessary to the decision, should be reserved for another day.

*As a matter of social policy, recreation with less litigation may well be preferable to litiga-* tion with less recreation.