

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

| | | |
|---|---|---|
| KYLE D. BECKER, | ) | No. ED112874 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Charles County |
| vs. | ) | Cause No. 2211-CC00263 |
| | ) | |
| THOMAS S. SCHENK, | ) | Honorable Daniel G. Pelikan |
| | ) | |
| Respondent. | ) | FILED: June 17, 2025 |

Opinion

Kyle D. Becker (Plaintiff) appeals from the circuit court's grant of summary judgment in favor of Thomas M. Schenk (Defendant) on a claim of personal injury arising out of an ice hockey game. In his sole point on appeal, Plaintiff argues the circuit court erred in finding he assumed the risk of breaking a bone while playing amateur ice hockey. Defendant counters that the circuit court correctly awarded judgment because Plaintiff expressly and impliedly assumed this risk by voluntarily signing a risk agreement and playing ice hockey, a sport known for its violent nature. Because Plaintiff failed to raise a genuine issue of material fact precluding summary judgment as to express assumption of risk, we find the trial court properly awarded summary judgment to Defendant. Accordingly, we affirm the circuit court's judgment.

<u>Background</u>

The following facts are limited to the record before the circuit court on summary judgment:[1]

Plaintiff and Defendant were participants in the intermediate skill division of the Arch Hockey League, an amateur adult ice hockey league. In order to participate in the league, both parties signed a two-page Liability Waiver and Assumption of Risk Agreement (Risk Agreement). The Risk Agreement states the signer waives their right to sue other participants over risks of playing ice hockey including:

> ***Physical body contact with other players***, referees, the boards, the ice, and the nets during the course of play, any of which may be incidental, coincidental, legal, ***subject to penalty,*** altercations, or otherwise, any of which may result in injuries to the head, eyes, teeth, face, hands, ***wrists***, elbows, shoulders, ribs, organs, hips, knees, ankles, feet, back and spinal cord, or other body parts, including ***broken bones***, cuts, dislocations, sprains, muscle tears, bruises, and bleeding[.]

(emphases added).

The league observes USA Hockey Rules, which prohibits slashing, forcefully swinging one's stick into the body or upper portion of the stick near the hands of another player, and body-checking, colliding into another player with one's body from behind or for purposes other than separating a player from the puck.

On December 30, 2019, Plaintiff and Defendant played for opposing teams during the league's winter championship game. The parties lacked any financial or professional incentive to win. Although the parties describe the league as 'no-contact,' players are still required to wear protective equipment, including gloves, elbow pads, pants with protection, shin guards, skates, and a helmet with a visor to prevent injury.

---

[1] *Green v. Fotoohighiam*, 606 S.W.3d 113, 117 (Mo. banc 2020) ("Facts come into a summary judgment record ***only*** via Rule 74.04(c)'s numbered-paragraphs-and-responses framework.") (internal quotation omitted) (emphasis in original).

During the game at issue, Plaintiff carried the puck into the opposing team's side of the rink. Defendant was trying to stop Plaintiff from scoring when he slashed and body-checked Plaintiff.[2] Plaintiff fell onto the ice and suffered a broken wrist. A Referee initially called a two-minute penalty against Defendant for the slash and body-check, then Referee increased the penalty to five minutes after seeing Plaintiff's injury.

Subsequently, Plaintiff brought a personal injury suit against Defendant. In his answer, Defendant raised assumption of the risk as an affirmative defense. In deposition, Defendant asked Plaintiff about the Risk Agreement:

Counsel:   [The Risk Agreement] lays out, maybe not all, but quite a few risks that Arch Hockey wants you to be aware of before you participate in their hockey games; correct?

Plaintiff:   Yes, sir.

Counsel:   And you acknowledge—and under description of risk it says: I hereby acknowledge that I'm aware of the risks and hazards of ice hockey, and that any of my participation in the program is done voluntarily and I assume all risks known and unknown.

Plaintiff:   Where is that at?

Counsel:   Right under description of risks, that first paragraph.

Plaintiff:   Oh, yeah.

Counsel:   Then [the Risk Agreement] has five bullet points, the first one is: Physical body contact with other players could hurt—I'm paraphrasing—wrists, including broken bones. Correct?

Plaintiff:   Yes.

Counsel:   And then the next bullet point says that: The risks include, but are not limited up to and including death from striking by hockey sticks, any of which may [be] incidental, coincidental, legal, subject to

_____

[2] On appeal, Plaintiff argues his broken wrist was caused by Defendant's hooking, which is the illegal use of a player's hockey stick on another player's body or stick to gain positional advantage. However, the summary judgment record shows that Plaintiff testified in deposition that either the slash or body-check caused his injury, not the hooking.

3

penalty and can result in injuries to your wrists, including broken bones. Did I read that correctly, even though I skipped some words?

Plaintiff:    Yes.

After the close of discovery, Defendant moved for summary judgment. Along with his memorandum in support, Defendant filed a Statement of Uncontroverted Material Facts (Statement) containing separately numbered paragraphs. In the Statement, Defendant cited to the above portion of Plaintiff's deposition. Defendant's Statement dedicated five paragraphs to referencing the two-page Risk Agreement, which was attached as an exhibit. In Defendant's Reply in Support of Motion for Summary Judgment (Reply), Defendant also referred to the Risk Agreement, which also was attached as an exhibit. Specifically, in his Reply, Defendant quoted the above portion of the Risk Agreement in one of his numbered paragraph responses. Plaintiff did not deny reading or signing the Risk Agreement nor did he deny voluntarily playing the game. Plaintiff denied understanding that the Risk Agreement was a binding agreement or that it explicitly mentioned body-checking as a risk. Plaintiff in his Statement of Additional Material Facts discussed and cited to the USA Hockey Rules which prohibited slashing and body-checking. In Plaintiff's Response to Defendant's Statement, Plaintiff admitted a known risk of ice hockey was players colliding into each other, resulting in injury and that other players could purposefully or accidentally break the rules of the game. Also, in his Response to Defendant's Statement, Plaintiff denied being aware that there was a risk of illegal body checks. Plaintiff additionally cited to Referee's deposition testimony referencing the five times Referee witnessed a body-check resulting in a broken bone as support for his contention that broken bones are outside the realm of reasonable risks of playing ice hockey.

<u>Standard of Review</u>

This Court reviews grants of summary judgment *de novo*, which means we do not defer to the circuit court's order but instead use the same criteria as the circuit court. *Mobile Nat'l Dev. Co., LLC v. Spectrum Mid-Am., LLC*, 705 S.W.3d 593, 599 (Mo. App. E.D. 2024) (internal quotation omitted); *see also Green v. Fotoohighiam*, 606 S.W.3d 113, 115 (Mo banc. 2020) (internal citation omitted). We are limited to reviewing the Rule 74.04[3] record, which governs the summary judgment proceeding. *See Green*, 606 S.W.3d at 116. "The [circuit] court and this Court look to the pleadings, depositions, answers to interrogatories and admissions on file together with any affidavits to determine whether the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law." *Ferbet v. Hidden Valley Golf & Ski, Inc.*, 618 S.W.3d 596, 602 (Mo. App. E.D. 2020) (internal citation omitted).

"Summary judgment is appropriate when the movant establishes that the material facts are undisputed and they are entitled to judgment as a matter of law." *Mobile Nat'l.*, 705 S.W.3d at 599 (citing *ITT Com. Fin. Corp. v. Mid-America Supply Corp.*, 854 S.W.2d 371, 377 (Mo. banc 1993)). To demonstrate no genuine issue of material fact exists, the movant must show there is no other plausible contradictory account of essential facts. *Id.* (internal citation omitted).

> [Where the] defending party [is the movant, it] may establish a right to judgment by showing: (1) facts negating any one of the non-movant's elements; (2) that the non-movant, after an adequate period of discovery, has not been able and will not be able to produce evidence sufficient to allow the trier of fact to find the existence of any one of the non-movant's elements; or (3) ***that there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly-pleaded affirmative defense.***

*Weber v. Fed. Home Loan Mortg. Corp.*, 675 S.W.3d 728, 732 (Mo. App. E.D. 2023) (quoting *ITT Com. Fin. Corp.*, 854 S.W.2d at 381)) (emphasis added).

---

[3] All Rule references are to Mo. R. Civ. P. (2024).

"Only genuine disputes of material facts preclude summary judgment." *Top Priority Transit, LLC v. Cape Auto Pool, Inc.*, 680 S.W.3d 536, 542 (Mo. App. E.D. 2023) (citing *Green*, 606 S.W.3d at 115). "We view the record in the light most favorable to the non[-]moving party and afford that party the benefit of all inferences which may be reasonably drawn from the record." *Mobile Nat'l*, 705 S.W.3d at 599 (internal citation omitted). "However, facts contained in affidavits or otherwise in support of the party's motion are accepted as true unless contradicted by the non-moving party's response to the summary judgment motion." *Green*, 606 S.W.3d at 116 (internal citation omitted). "We will affirm the [circuit] court's summary judgment on any ground supported by the record, whether relied upon by the [circuit] court or not." *See Weber*, 675 S.W.3d at 732.

Discussion

## I.      The circuit court did not err in granting summary judgment

Plaintiff argues he did not assume the risk of suffering a broken bone from playing ice hockey and asks this Court to reverse the circuit court's grant of summary judgment. Defendant contends the circuit court properly awarded summary judgment because Plaintiff both expressly and impliedly assumed the risks of playing ice hockey, including but not limited to broken bones. We hold Plaintiff expressly assumed the risk of breaking a bone while playing ice hockey as the Risk Agreement clearly and unambiguously included that risk.

A plaintiff claiming personal injury must prove the following elements: "(1) the defendant had a duty to the plaintiff; (2) the defendant failed to perform that duty; and (3) the defendant's breach was the proximate cause of the plaintiff's injury." *State ex rel. Tyler Techs., Inc. v. Chamberlain*, 679 S.W.3d 474, 477 (Mo. banc 2023) (internal quotation omitted). The Supreme Court of Missouri heightened the plaintiff's burden of proof for recovery in personal injury cases arising out of athletic competitions from negligence to recklessness. *See Ross v.*

6

*Clouser*, 637 S.W.2d 11, 13–14 (Mo. banc 1982). Recklessness requires proving that the defendant deliberately or willfully engaged in conduct that demonstrated a reckless disregard for the plaintiff's safety. *McKichan v. St. Louis Hockey Club, L.P.*, 967 S.W.2d 209, 211 (Mo. App. E.D. 1998) (citing *Ross*, 637 S.W.2d at 14) (applying Illinois's standard for personal injury arising from sports which is the same as Missouri's). "In amateur contact sports . . . [o]rdinary negligence principles are inapplicable in such cases because 'conduct which might be "unreasonable" in everyday society is not actionable because it occurs on the athletic field.'" *Elias v. Davis*, 535 S.W.3d 737, 744–45 (Mo. App. W.D. 2017) (quoting *McKichan*, 967 S.W.2d at 211–12)).

The assumption of the risk doctrine is dispositive of this appeal. Defendant characterized assumption of the risk as an affirmative defense, which guides our decision. *Ferbet*, 618 S.W.3d at 603, 606–07 (resolving summary judgment through applying the defendant's affirmative defense of express assumption of the risk). "An 'affirmative defense' is defined as a defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's claim, ***even if all the allegations in the complaint are true***." *Hynes v. Missouri Dep't of Corr.*, 689 S.W.3d 516, 525 n.8 (Mo. App. W.D. 2024) (internal quotation omitted) (emphasis in original). A defendant has the burden of proving their affirmative defense. *Noelke v. Heartland Indep. Living Ctr.*, 637 S.W.3d 378, 380 (Mo. App. E.D. 2021) (internal citations omitted). Whether express assumption of the risk is treated as an affirmative defense or as defeating an element of the plaintiff's personal injury claim, the effect on the summary judgment dispute remains the same. *See Ferbet*, 618 S.W.3d at 606 (noting express assumption of the risk bars a plaintiff's recovery for injuries suffered from a specified risk). If this Court finds the summary judgment record

shows that Plaintiff expressly assumed the risk of his injury, then he is barred from recovering on his claim, making the grant of summary judgment to Defendant appropriate.  *See id.*

      A.      <u>The circuit court did not err in considering the terms of the Risk Agreement because Defendant sufficiently made specific reference to it in the summary judgment record</u>

Preliminarily, Plaintiff disputes whether the Risk Agreement was properly in the summary judgment record.  Plaintiff asserts that this Court cannot consider the terms of the Risk Agreement because Defendant merely attached it to his Statement, and did not cite it with particularity.  Additionally, Plaintiff states Defendant's description of the risks was insufficient because Defendant did not elaborate further.  We disagree.

The party seeking summary judgment must file a statement of uncontroverted material facts with separately numbered paragraphs supported by "specific references to the pleadings, discovery, exhibits or affidavits that demonstrate the lack of a genuine issue as to such facts" and the relied upon materials must be attached.  Rule 74.04(c)(1).  The non-movant responds by admitting or denying the facts alleged in the same numbered paragraph format.  Rule 74.04(c)(2).  If the non-movant denies a fact then the response must "have specific reference to pleadings, discovery, exhibits or affidavits that demonstrate specific facts showing that there is a genuine issue for trial."  Rule 74.04(c)(2).  The movant can file a reply to the non-movant's response following the same formatting and citation requirements as the statement of uncontroverted material facts.  Rule 74.04(c)(3).

This Court can only determine and review summary judgment based upon the facts provided in the Rule 74.04 numbered-paragraphs-and-responses framework—not the whole circuit court record.  *Green*, 606 S.W.3d at 117 (internal quotation omitted).  Attached materials such as "[a]ffidavits, exhibits, discovery, etc. generally play a secondary role, and then only as cited to support Rule 74.04(c) numbered paragraphs or responses."  *Id.* (internal quotation

omitted).  A grant of summary judgment withstands appeal if "it flows as a matter of law from appropriate Rule 74.04(c) numbered paragraphs and responses *alone*."  *Id.* at 117–118 (internal quotation omitted) (emphasis in original).  When these rules are not followed, courts must resort to sifting through voluminous summary judgment records, causing them to impermissibly act as advocates.  *Top Priority Transit*, 680 S.W.3d at 542 (internal quotation omitted).

Despite Plaintiff's contention, no such violation of Rule 74.04 occurred here.  Defendant cited and attached the two-page Risk Agreement in his Statement and Reply alongside the contended material fact that Plaintiff agreed to the risks enumerated in the agreement.  *See* Rule 74.04(c).  Further, Defendant cited and attached cumulative records of the purported material fact of Plaintiff's waiver by referencing, in his Statement, specific portions of Plaintiff's deposition in which he testified to the risks included in the Risk Agreement.  *See id.* Additionally, Defendant quoted the Risk Agreement itself, specifically the section on risks involving physical contact, in his Reply.

Plaintiff relies upon *Green*, *Weber*, and *Top Priority Transit* to support his argument that we cannot look to the terms of the Risk Agreement because it is not part of the properly constituted summary judgment record.  However, these cases are easily distinguishable and do not support Plaintiff's strained interpretation of the summary judgment rule.  For example, the non-movant in *Green* wholly failed to file a response to the summary judgment motion, and then requested the trial court sift through the movant's exhibits to find support for non-movant's argument.  *Green*, 606 S.W.3d at 115.  In *Weber*, the movant failed to state a fact, but it was not a *material* fact, and thus had no impact on the summary judgment analysis.  *Weber*, 675 S.W.3d at 732.  In *Top Priority Transit*, this Court found the circuit court improperly relied upon a deposition excerpt that was not cited in any statement of uncontroverted material fact or reply

9

thereto. *Top Priority Transit*, 680 S.W.3d at 542–43. None of these issues plague the summary judgment record in the case at bar.

In applying Rule 74.04, we note that not all minor errors impede review. *See Layton v. Mercy Hosp. E. Cmtys.*, 692 S.W.3d 426, 434 (Mo. App. E.D. 2024) (finding no violation of Rule 74.04 in typographically misciting to a four-page document instead of the fourteen-page document actually sworn to by a witness where the material facts were presented in separately numbered paragraphs and otherwise correctly cited to supporting materials). Although we acknowledge it would have been best practice for Defendant to cite to a page or paragraph number in the short Risk Agreement for each risk, we did not have to sift through the record to find the relevant portions of a two-page document. *See id.*

Therefore, we find Defendant incorporated the Risk Agreement into the summary judgment record under Rule 74.04. *See id.* We now turn to whether the Risk Agreement acts as an express assumption of the risk.

B. <u>The circuit court properly awarded summary judgment because Plaintiff expressly assumed the risk of a breaking a bone while playing hockey</u>

Plaintiff disputes whether he assumed the risk of breaking his wrist during an amateur hockey game. We find summary judgment was properly granted to Defendant under the express assumption of the risk doctrine.

"In ***express*** assumption of the risk, . . . the plaintiff makes an express statement that he is voluntarily accepting a ***specified risk*** and is barred from recovering damages for an injury resulting from that risk." *Ferbet*, 618 S.W.3d at 606 (citing *Coomer v. Kansas City Royals Baseball Corp.*, 437 S.W.3d 184, 191 (Mo. banc 2014)) (emphases added). Where such an express assumption of the risk exists, the defendant does ***not*** owe a duty to prevent the plaintiff from suffering an injury, thus the defendant cannot be liable. *Id.* (citing *Coomer*, 437 S.W.3d at

10

193). To effectively insulate a defendant from a personal injury claim, a liability waiver agreement must clearly and explicitly state the risks the signer agrees to waive. *Id.* at 603 (citing *Alack v. Vic Tanny Int'l of Mo., Inc.*, 923 S.W.2d 330, 334 (Mo. banc 1996) (enforcing a liability waiver agreement for snow tubing because its terms of risk were sufficiently clear and explicit)). Express assumption of the risk in a signed waiver agreement is a matter of contract interpretation, for which "[t]he cardinal principle . . . is to ascertain the intention of the parties and to give effect to that intent." *Id.* (quoting *Dunn Indus. Grp., Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 428 (Mo. banc 2003)); *see also Chochorowski v. Home Depot U.S.A.*, 404 S.W.3d 220, 226 (Mo. banc 2013) (internal quotation omitted) ("The parties' intent is presumed to be expressed by the plain and ordinary meaning of the language of the contract.").

Here, Plaintiff suffered a broken bone while playing hockey. The Risk Agreement clearly and unambiguously denotes the risk of "broken bones" as an injury resulting from "physical contact with other players . . . during the course of play[.]" Such contact may be "incidental, coincidental, legal, subject to penalty, altercations, or otherwise, any of which may result in injuries to the . . . wrists . . . or other body parts, including broken bones . . . ." Plaintiff read and signed the Risk Agreement and does not challenge the voluntariness of entering into that agreement. *See Ferbet*, 618 S.W.3d at 603 (quoting *Dunn Indus.*, 112 S.W.3d at 428); *see also Chochorowski*, 404 S.W.3d at 228 (internal citation omitted) ("A signer's failure to read or understand a contract is not, without fraud or the signer's lack of capacity to contract, a defense to the contract.").[4] The plain language of the Risk Agreement bars Plaintiff's recovery for his

---

[4] Additionally, to the extent Plaintiff maintains that he did not expressly assume the risk of suffering a broken bone because he did not understand the Risk Agreement was a binding document, we further find Plaintiff abandoned this argument as he did not develop it in the argument section of his briefs. *See Republic Fin., LLC v. Ray*, 698 S.W.3d 184, 188 (Mo. App. E.D. 2024) (internal quotation omitted) ("To be properly briefed, an appellant must develop in the argument section of the brief the claim of error raised in the point relied on.").

11

broken wrist because by signing the Risk Agreement Plaintiff understood he could suffer a broken bone from another player's violation of the rules.

Even viewed in the light most favorable to Plaintiff, we find the Risk Agreement, Plaintiff's deposition testimony, and the league rules in the summary judgment record show Plaintiff knew that colliding with other players during play could result in injury. Moreover, Plaintiff had knowledge that other players could purposefully or accidentally break the rules of the game to prevent him from scoring. Although Plaintiff contends the Risk Agreement fails to specifically mention illegal body-checking, Plaintiff's focus on the mechanism of the injury does not overcome the plain language of the Risk Agreement, which specifies risks of injury as result of engaging in the game of ice hockey.

By reading and signing the Risk Agreement, Plaintiff expressly assumed the risk of his precise injury. *See Ferbet*, 618 S.W.3d at 606 (citing *Coomer*, 437 S.W.3d at 191). Thus, Plaintiff cannot recover as a matter of law, and we hold the circuit court did not err in granting summary judgment in favor of Defendant. *See Mobile Nat'l*, 705 S.W.3d at 599 (internal citation omitted).

C. The circuit court also properly awarded summary judgment because Plaintiff impliedly assumed the risk of a breaking a bone while playing hockey

Although express assumption of the risk disposes of this case, as explained above, we note the circuit court also considered ice hockey's inherent risks when granting summary judgment to Defendant. Knowing that the standard of review allows this Court to affirm on any ground, Plaintiff addressed both express and implied assumption of the risk on appeal. *See Weber*, 675 S.W.3d at 732. As Missouri courts have not yet addressed whether players of amateur ice hockey impliedly assume the risk of broken bones during play, this is a matter of first impression. *See Neil v. St. Louis County*, 688 S.W.3d 268, 274 (Mo. App. E.D. 2024)

12

(internal quotation omitted). Here, we briefly explain why the circuit court was also correct in finding Plaintiff impliedly assumed the risk such that summary judgment was properly granted.

Under the doctrine of implied assumption of the risk, a person who voluntarily engages in an activity that has an inherent risk is deemed to voluntarily consent to that risk and may not then assert a defendant's liability for failing to protect them from that risk. *Munoz v. Six Flags St. Louis, LLC*, 670 S.W.3d 239, 243 (Mo. App. E.D. 2023) (quoting *Coomer*, 437 S.W.3d at 191). However, the defendant "still owes a duty of reasonable care not to alter or increase such inherent risks." *Id.* at 244 (internal quotations omitted). "Inherent risks are . . . an essential character of the activity in question." *Id.* (internal quotation omitted).

To determine whether a defendant acted recklessly by altering or increasing the inherent risks of an athletic competition, Missouri courts consider the following non-exclusive factors in a fact-specific inquiry:

> the specific game involved, the ages and physical attributes of the participants, their respective skills at the game and their knowledge of its rules and customs, their status as amateurs or professionals, the type of risks which inhere to the game and those which are outside the realm of reasonable anticipation, the presence or absence of protective uniforms or equipment, the degree of zest with which the game is being played, and other factors.

*McKichan*, 967 S.W.2d at 212 (citing *Ross*, 637 S.W.2d at 14).

Like this case, *McKichan* involved ice hockey, but on a professional rather than amateur level. *See id.* Although *McKichan* was applying Illinois law, it noted Missouri had explicitly adopted the Illinois standard of recklessness in *Ross*, thus the analysis remains applicable here. *See id.* at 211 (citing *Ross*, 637 S.W.2d at 14). Applying the above implied assumption of the risk factors, *McKichan* found a defendant-player who body-checked an opposing player after the play ended, causing that player to fall unconscious, nevertheless did not act recklessly. *Id.* at 211–13. Specifically opining on the risks inherent to ice hockey as a sport, *McKichan* observed:

13

> Rough play is commonplace in professional hockey. Anyone who has attended a professional hockey game or seen one on television recognizes the violent nature of the sport. In order to gain possession of the puck or to slow down the progress of opponents, players frequently hit each other with body checks. They trip opposing players, slash at them with their hockey sticks, and fight on a regular basis, often long after the referee blows the whistle. Players regularly commit contact beyond that which is permitted by the rules, and, we are confident, do it intentionally. They wear pads, helmets and other protective equipment because of the rough nature of the sport.

*Id.* at 212–13.

Here, applying the *McKichan* factors likewise supports finding Plaintiff impliedly assumed the risk. *See id.* at 212 (citing *Ross*, 637 S.W.2d at 14). The summary judgment record shows both Plaintiff and Defendant are adults who were playing ice hockey in the intermediate skill division—meaning they have more experience than beginner amateur adult players. The record shows Plaintiff and Defendant are both knowledgeable of hockey's rules and customs. Plaintiff and Defendant both wore protective equipment to avoid the possibility of injury.

Most important, even viewed in the light most favorable to Plaintiff, the sport of ice hockey played at any level, amateur or otherwise, is and remains an aggressive contact sport, which, unsurprisingly, means players are at risk of serious physical injury. *See id.* "In contact sports, physical contact and injuries among participants [are] inherent and unwarranted judicial intervention might inhibit the game's vigor." *Elias*, 535 S.W.3d at 745 (quoting *McKichan*, 967 S.W.2d at 212). Given the lack of Missouri cases, we examine cases from other jurisdictions in addressing the issue of recklessness in amateur ice hockey. *See Neil*, 688 S.W.3d at 274. Other states that also follow the recklessness standard granted summary judgment in favor of defendant-players in contact sports, specifically ice hockey, in instances of conduct more egregious than in this case. *Borella v. Renfro*, 137 N.E.3d 431, 436–437, 440–41 (Mass. App. Ct. 2019) (finding a high school hockey player did not act recklessly under Massachusetts law

14

when he body-checked and slashed an opposing player's wrist with his skates as hard checking was an inherent and fundamental part of the sport); *Barton by Barton v. Hapeman*, 674 N.Y.S.2d 188, 188–89 (N.Y. App. Div. 1998) (finding a defendant-player did not act recklessly under New York law when he "charged" and "cross-checked" a thirteen-year-old player from behind even in violation of league rules). Plaintiff cites to Referee's testimony about the five times Referee witnessed a body-check resulting in a broken bone as proof that broken bones are outside the realm of reasonable risks while playing ice hockey. However, this testimony actually supports the opposite conclusion—that Plaintiff should have known a broken bone was a possibility because it happened multiple times before. *See Ferbet*, 618 S.W.3d at 607 (considering prior similar incidents as relevant to evaluating whether a particular activity, such as snow tubing, has inherent risks); *see also* O*.L. v. R.L.*, 62 S.W.3d 469, 476–77 (Mo. App. W.D. 2001) (internal quotation omitted) ("[F]oreseeability is not to be measured by what is more probable than not, but includes whatever is likely enough in the setting of modern life that a reasonably thoughtful person would take account of it in guiding practical conduct.").

Plaintiff argues *McKichan* is distinguishable because of his status as an amateur, the lack of professional and financial incentive to win, and the rarity of broken bones in amateur games support a finding Defendant acted recklessly. While we acknowledge *McKichan*'s emphasis on injuries sustained during professional sports play, we do not find that difference dispositive here given the facts in the summary judgment record. *See McKichan*, 967 S.W.2d at 212–13. Although Plaintiff and Defendant did not have a professional or financial incentive to win the game, this one factor does not alter our holding as every other factor supports a finding that play resulting in a broken bone is an inherent risk of ice hockey, a contact sport known for rough play

15

and for which injuries such as suffered by Plaintiff are reasonably anticipated. *See id.* Point One is denied.

## Conclusion

The judgment of the circuit court is affirmed.

_____
Rebeca Navarro-McKelvey, J.

Lisa P. Page, P.J. and
Virginia W. Lay, J., concur.