798 F.2d 1414
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Olice C. FIELDS, Sr., and Willie Fai Fields, Plaintiffs-Appellants,
v.
SHELTON FERTILIZER CO., INC., Defendant-Appellee.
 No. 85-5397.
 United States Court of Appeals, Sixth Circuit.
 July 11, 1986.
 
 Before MARTIN, KRUPANSKY and GUY, Circuit Judges.
 GUY, Circuit Judge.
 
 
 1
 Plaintiffs appeal from a district court order granting defendant Shelton Fertilizer Company's (SFC) motion for a directed verdict in this wrongful death action. Although the jury ultimately found an employee of SFC to be liable for decedent's death, the court found no basis in Tennessee law for allowing th e issue of employer SFC's respondeat superior liability to reach the jury. For the following reasons, we reverse and remand this matter to the district court for further proceedings consistent with this opinion.
 
 
 2
 On May 23, 1977, Larry Glass was working as the plant manager at Shelton Fertilizer Company in Covington, Tennessee. As plant manager, customer relations was one aspect of Glass' job, and he saw to it that customers received the seed, feed, or fertilizer which they sought. When customers arrived at the plant, Glass would assign employees to load the customers' trucks with the products requested.
 
 
 3
 On the morning of May 23, Olice Fields, Jr., arrived at SFC to pick up some cotton seed for his employer, Ring-A-Round Seed Company. Upon arrival, he met with Glass who told him to pull his truck up by the gin building where it would be loaded up. Fields then parked the truck as requested and returned to the plant office. At that time, Fields told Glass that he hoped his truck would be loaded soon, as he was in a hurry to get back to Memphis. Glass told Fields that the truck would be loaded as soon as possible. As time passed and the truck remained unloaded, Fields and Glass began to argue about getting the truck loaded. At approximately noon, Richard Edwards, another truck driver, arrived to pick up some fertilizer. Edwards testified that as he pulled up to the plant office to see Glass, he witnessed Glass and Fields standing together. When he got close enough, he heard Glass say in an aggravated tone, "Don't try to mess with me, you son of a bitch." After that comment, Glass struck Fields in the jaw with this hand and Fields fell backwards and hit the ground "like a tree." According to Edwards, after Glass hit Fields, Glass walked away and two other men came and helped Fields to his feet and assisted him to a bathroom. Edwards was the sole witness to the altercation between Fields and Glass.
 
 
 4
 Eulys DeVaughn, another employee of SFC, testified through a deposition read at trial that sometime around noon Glass told him that Fields had gotten smart with him and that he "slapped" Fields.
 
 
 5
 After Fields was helped to the bathroom, he walked back to his truck to continue waiting. Subsequently, an SFC employee found Fields lying on the ground beside his truck. Fields was unconscious, and the employee notified Glass. Glass then ordered Jimmy Whitesides to put Fields into the company truck and take him to the hospital. He further ordered Whitesides to tell the people at the hospital that Fields had a bad lick on the back of his head and it looked like he fell out of his truck and hit his head. Fields was then taken to the hospital where he was found to have a fractured skull. He died that evening from swelling of the brain which caused pressure to the brain stem.
 
 
 6
 Plaintiffs, Olice and Willie Fields, subsequently filed this action against SFC, Larry Glass, and various other defendants, alleging civil rights violations, a denial of equal protection, and a pendent claim for wrongful death under state law. Before trial, the district court dismissed all claims except those against SFC, Larry Glass, and other SFC employees. The case was then tried before a jury. At the close of plaintiffs' proofs, the court directed verdicts with respect to all remaining defendants, except for Larry Glass. The case proceeded as a state wrongful death action, and the jury ultimately returned a verdict for plaintiffs against Larry Glass and awarded $200,000.00 as compensatory damages.
 
 
 7
 Following judgment, plaintiffs filed this appeal from the district court's order directing a verdict in favor of SFC. Plaintiffs specifically object to the district court Is finding that SFC cannot be held responsible under a respondeat superior theory of liability because Glass was not acting within the scope of his employment when he hit Fields, Alternatively, plaintiffs argue that even if Glass did not act in the scope of his employment when he hit Fields, SFC can still be found liable because Glass acted in the scope of his employment when he negligently failed to take precautions to aid Fields. Finally, plaintiffs argue that SFC is liable because it ratified the actions of Glass.
 
 
 8
 In considering a motion for a directed verdict, the trial court must determine whether sufficient evidence was presented to raise an issue of material fact for the jury. In this respect, the evidence must be viewed in a light most favorable to the non movant and all inferences must be drawn accordingly. In order to grant the motion, the trial court must find either a complete absence of proof on the issues or no controverted issues of fact upon which reasonable minds could differ. On appeal, we apply the same standard used by the trial court. See Milstead v. International Brotherhood of Teamsters, 580 F.2d 232, 235 (6th Cir.1978), cert. denied, 454 U.S. 996, 102 S.Ct. 394, 70 L.Ed.2d 211 (1981); Sawchik v. E.I. DuPont Denemours & Co., 783 F.2d 635, 636 (6th Cir.1986).
 
 
 9
 Because this appeal concerns a pendent state claim, we must examine Tennessee law to determine the contours of respondeat superior liability. Under Tennessee law, an employer is responsible for an act of its employee, whether the act be negligent, wanton or willful, if the employee was acting in the scope of his employment at the time of the act. Terry v. Burford, 131 Tenn. 451, 175 S.W. 538 (1915). However, "a master is not liable for the willful acts of his servant who steps aside from his master's business and commits an act wholly independent and foreign to the scope of his employment." Sullivan v. Morrow, 504 S.W.2d 767, 772 (Tenn.App.1973); Terry, 175 S.W. at 543. In general, an act is in the scope of employment if it is either incident to or in furtherance of the employer's business. 236 F.Supp. 194, 197 (E.D.Tenn.1964); Anderson v. Covert, 193 Tenn. 238, 245 S.W.2d 770, 771 (1952).
 
 
 10
 Although the black-letter rules are simply stated, an examination of how they have been applied by Tennessee courts is necessary to completely understand them. In Anderson v. Covert, the defendant owned a small restaurant. One morning, the plaintiff entered the restaurant and became disorderly. Defendant's employee, Miller, then grabbed the plaintiff and "threw him out, and in doing so, gave him a very brutal beating, kicking him in the sides and back and knocking out several of his teeth." 245 S.W.2d at 771. The trial judge submitted the issue of defendant's respondeat superior liability to the jury, and the jury found for plaintiff, Although the Supreme Court of Tennessee ultimately denied certiorari on technical grounds, the court went on to explain that the issue of respondeat superior liability was properly submitted to the jury:
 
 
 11
 The eviction here was made by Miller from defendant's restaurant, as an incident of his employment. The employee lost his temper and used more force than was necessary to evict the plaintiff, but the tort was committed as an incident of the employment and in the course thereof.
 
 
 12
 Id.
 
 
 13
 In Hunt Berlin Coal Co. v. Paton, 139 Tenn. 611, 202 S.W. 935 (1918), the Tennessee Supreme Court affirmed the decision of the Tennessee court of civil appeals which held that the trial judge should have directed a verdict on behalf of the defendant employer. Defendant in that case was a coal company employing W. Morehead as a manager of one of its yards. One day while Morehead was at work, plaintiff visited the yard to inspect electrical meters. while on defendant's premises, plaintiff began insulting Morehead personally and coal workers in general. The insults lead to an altercation in which Morehead shot and killed plaintiff. In finding that the defendant employer could not be held liable on these facts, the court explained:
 
 
 14
 [T]he dispute which led to the homicide was not over any defect in the meter, but was one in relation to the relative demerits of the employers of the disputants; and it was in no way within the scope of Morehead's employment to engage in a debating match, garnished with profanity, or to settle by force the question of the probity or fair dealing of the coal company.
 
 
 15
 202 S.W. at 938.
 
 
 16
 Both Anderson and Hunt involved employees with management duties who committed assaults while at work. The distinguishing feature between the two cases is found in the origin of the disputes which gave rise to the assaults. In Anderson, the dispute which lead to the assault was work related--the eviction of a disorderly customer. In Hunt, the assault arose out of a personal argument between the company manager and a meter inspector. These cases illustrate that under Tennessee law, when a manager exercises excessive force in carrying out a work related activity, the employer may be held liable for an assault which might result. The tort in such a case is committed as an incident of the employment.[1]
 
 
 17
 Plaintiffs argue that they have presented at least enough evidence to let the question of whether Glass was acting in the scope of his employment when he assaulted Fields go to the jury. We agree. Plaintiffs presented evidence that Glass is the plant manager at SFC, and one aspect of his job is customer relations. On the morning of the assault, Fields arrived to pick up some seed and it was Glass' job to see to it that Fields' truck was loaded up with the seed. Glass testified that when the loading took longer than Fields anticipated, the two of them began to argue about getting the truck loaded. Richard Edwards testified that when he arrived at the plant to pick up some seed, he witnessed Fields and Glass arguing and he saw Glass strike Fields in the jaw with his hand. Although Edwards did not testify as to the topic of the argument, a jury could reasonably infer that the argument related to the delay in loading Fields' truck. At the time of the directed verdict, no evidence had been presented indicating that the argument was personal in nature. We there fore find that the trial court erred in directing a verdict in SFC's favor, as plaintiffs presented sufficient evidence to raise an issue of material fact as to whether Glass was acting within the scope of his employment when he assaulted Fields.[2]
 
 
 18
 Accordingly, we reverse the order of the district court granting defendant SFC's motion for a directed verdict, and remand for a new trial as to this defendant.[3]
 
 
 
 [1]
 The policy for imposing respondeat superior liability in such a situation is clear:
 When an employer requires interpersonal contact in order to conduct his business, at some point the business may give rise to disruptions, complaints, and arguments. Since an employer's business is dependent on human beings and not machines to function, the business should bear the risk of human emotion just as it bears the risk of human carelessness. Where an employer's business has given rise to an argument, as where a customer is trying to settle a complaint, but the employee will not or can not give the customer. satisfaction, the employer should not be able to remove himself from the situation his business has created by claiming his business had terminated when the two reached an impasse....
 This theory does not impose the equivalent of absolute liability on the employer. Liability would be imposed only when the emotion giving rise to the assault arises from and is incident to the work performed for the employer. Thus, while this rationale would impute liability for an assault committed by an employee out of anger arising out of his work, it would not impute liability for a similar assault where no work-related dispute preceded the assault. This theory requires only that an enterprise be charged with the cost of those injuries attributable to i t § activities.
 Comment, Employer Liability for Assaults by Employees, 48 Mo.L.Rev. 655, 674 (1983) (footnotes omitted); Annot., 34 A.L.R.2d 372, 428-433 (1954).
 
 
 [2]
 Plaintiffs ask that we not only reverse the trial court's order, but that we also direct a verdict in their favor. This is not appropriate since the directed verdict was entered in the trial court before SFC had the opportunity to offer proof on this issue
 
 
 [3]
 With respect to plaintiffs' alternative theories for reversal of the directed verdict, neither of them has merit. First, plaintiffs argue that SFC is liable under respondeat superior due to an alleged negligent failure of Glass to take precautions for Fields' safety after the assault. The problem with this theory is that plaintiffs never raised the issue of post-assault negligence in the wrongful death action. Plaintiffs' theory at trial was that Glass' assault caused the death, and no one testified that anything Glass did or did not do after the assault affected Fields. In fact, the only proof incident to care rendered after the assault pertained to an alleged civil rights violation in conjunction with what plaintiffs claimed was a coverup and conspiracy
 Second, plaintiffs argue that SFC ratified Glass' actions. This claim is without merit. Ratification is only indicated when the act committed was somehow in the principal's interest. In this case, that simply cannot be shown. Plaintiffs' only proof of for ratification is that SFC never punished Glass or investigated what really happened. However, failure to punish or discharge an employee does not constitute ratification by the employer. Wood v. Ball, 5 Tenn.App. 300 (1927).